# IN THE SUPREME COURT OF IOWA

No. 08–0133

Filed August 21, 2009

**IOWA LAND TITLE ASSOCIATION,**

 Appellant,

vs.

**IOWA FINANCE AUTHORITY, IOWA TITLE GUARANTY DIVISION,**

 Appellee,

And also concerning

**CHARLES W. HENDRICKS,**

 Applicant.

---

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

The Iowa Land Title Association appeals a district court judgment affirming the decision of the Iowa Title Guaranty Division. **AFFIRMED.**

James H. Gilliam of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Grant K. Dugdale, Assistant Attorney General, for appellee.

**WIGGINS, Justice.**

An attorney sought a waiver of the title plant requirement to become a participating abstractor under the Iowa Title Guaranty Program. The Iowa Land Title Association intervened taking a position adverse to the attorney. The agency, through one of its divisions, granted the attorney a waiver. The association sought judicial review of the agency decision. The district court affirmed the agency. Because we agree that the agency correctly construed the applicable statute and that the record was insufficient to review the agency action for substantial evidence, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Charles Hendricks graduated from Drake Law School. He was admitted to practice law in Iowa in 1999. Hendricks worked at the Lipman Law Firm and then at Wasker, Dorr, Wimmer & Marcouiller, P.C. from April 2003 through December 2006. At Wasker, he devoted almost 100% of his practice to real estate matters. In December 2006, he started his own law office. His main clients are mortgage brokers that conduct business statewide.

Hendricks' current practice focuses on real estate title work and real estate transaction closings. He forecasts that if he is allowed to become a certified abstractor, abstracting will constitute twenty-five percent of his business with closings, title opinions, probate, and litigation constituting the remaining seventy-five percent. All of Hendricks' employees have substantial experience in the title industry. His staff had abstracted over 3000 titles in the year prior to his application.

One reason Hendricks started his own law firm was to pursue the opportunity of becoming a participating abstractor in the Iowa Title

Guaranty Program. The legislature established the title guaranty program. Iowa Code § 16.91 (2007). The Iowa Title Guaranty Division is the agency that administers this program. *Id.* §§ 16.2(1), 16.91(1). The Code requires that each abstractor participating in the program "own or lease, and maintain and use in the preparation of abstracts, an up-to-date abstract title plant including tract indices for real estate for each county in which abstracts are prepared for real property titles guaranteed by the division." *Id.* § 16.91(5). The Iowa Title Guaranty Division may waive the title plant requirement upon an application, "which shows that the requirements impose a hardship to the attorney or abstractor and that the waiver clearly is in the public interest or is absolutely necessary to ensure availability of title guaranties throughout the state." *Id.*

In the spring of 2007, Hendricks filed for a waiver with the Iowa Title Guaranty Division so he could become a certified abstractor without a title plant. The Iowa Land Title Association intervened taking a position adverse to Hendricks. After holding a hearing, the Iowa Title Guaranty Board issued its ruling granting the requested waiver. One member of the board dissented.

The association petitioned for judicial review. The district court agreed with the board's decision and affirmed it. The association appeals.

## II. Issue.

On this appeal, we must decide if the board correctly construed the waiver provisions contained in section 16.91(5).

## III. Scope of Review.

When reviewing agency decisions, "[o]ur review is governed by Iowa Code chapter 17A." *Lakeside Casino v. Blue,* 743 N.W.2d 169, 172 (Iowa

2007). We must decide whether the conclusions we reach, after applying chapter 17A standards, are the same as those of the district court. *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 463–64 (Iowa 2004).

In reaching its decision, the board determined the meaning of the terms "hardship" and "public interest" as used in Iowa Code section 16.91(5). Unless the legislature vested the agency with the power to construe this statute, this court gives no deference to the agency's construction. Iowa Code § 17A.19(11)(*b*). To determine if the legislature vested the agency with the power to construe the statute, we examine the statutes creating the agency. *See State v. Pub. Employment Relations Bd.*, 744 N.W.2d 357, 360 (Iowa 2008) (looking at the creation statutes); *Mycogen*, 686 N.W.2d at 464 (examining chapter 85 when deciding the scope of review of an issue in a workers' compensation appeal).

The Iowa Finance Authority, which houses the Iowa Title Guaranty Division, was established to exercise "public and essential governmental functions" and to undertake other finance programs. Iowa Code § 16.2(1). The legislature vested the powers of the division with the Iowa Title Guaranty Board. *Id.* The enacting statute gave the Iowa Finance Authority "all of the general powers needed to carry out its purposes and duties, and exercise its specific powers." *Id.* § 16.5. When discussing the powers of the Iowa Title Guaranty Division, the Code merely states its powers relate "to the issuance of title guaranties." *Id.* § 16.2. The Iowa Finance Authority has the power to adopt rules pursuant to the Administrative Procedure Act "that are necessary for the implementation of the title guaranty program." *Id.* § 16.91(8). The Iowa Finance Authority also has the general power to make, alter, or repeal rules consistent with the provisions of chapter 16 of the Iowa Code and pursuant to the Iowa Administrative Procedure Act. *Id.* § 16.5(17).

The Code does give the Iowa Finance Authority extensive powers in order to effectuate its purpose, but does not give the agency the power to construe statutes. Therefore, when we construe Iowa Code section 16.91(5), we will not give any deference to the agency's construction of this section. *Id.* § 17A.19(11)(*b*). Accordingly, our review of the board's construction of section 16.91(5) will be for correction of errors at law. *Id.* § 17A.19(10)(*c*).

### IV. Rules of Statutory Construction.

The goal of statutory construction is to determine legislative intent. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). We determine the legislature's intent by the words the legislature chose, not by what it should or might have said. *State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006). Absent a statutory definition or an established meaning in the law, we give words their ordinary and common meaning by considering the context in which the word was used. *City of Des Moines v. Employment Appeal Bd.*, 722 N.W.2d 183, 196 (Iowa 2006).

### V. Construing the Term "Hardship."

The board determined the term "hardship," as used by the legislature in section 16.91(5), did not require a "hardship of an extraordinary magnitude or type." Consequently, it found a "financial hardship alone can constitute hardship." The association claims something more than a financial hardship is required.

Neither the Iowa Code nor the Administrative Code in place at the time of the board's decision defined the term "hardship" as used in section 16.91(5).[1] When the legislature used the term "hardship" in

---

[1]The current Administrative Code includes a definition of hardship. The Administrative Code defines hardship as "deprivation, suffering, adversity, or long-term adverse financial impact in complying with the title plant requirement that is more than minimal when considering all the circumstances. Financial hardship alone may constitute a hardship." Iowa Admin. Code r. 265—9.7(2).

section 16.91(5), it did not qualify the term. The legislature knows how to modify the word, "hardship," and has done so in many instances. *See, e.g.*, Iowa Code §§ 2C.18 (referring to a "needless hardship"), 13.15 (referring to a "financial hardship"), 17A.9A(2)(*a*) (referring to an "undue hardship"), 138.12(2) (referring to an "unnecessary hardship"), 232.69(3)(*e*) (referring to a "significant hardship"), 425.37 (referring to an "unreasonable hardship"), 554.3513(2) (referring to an "economic hardship"), 607A.6 (referring to an "extreme hardship"), 815.9(1)(*b*) (referring to a "substantial hardship"), 904.902 (referring to a "physical hardship"). Without any modification of the word "hardship" by the legislature, we must assume the legislative intent in section 16.91(5) was to allow the board to grant a waiver if the applicant can show a "hardship" in the sense that the word is ordinarily used and understood.

"Hardship" as defined in the dictionary means privation or suffering. *Webster's Third New International Dictionary* 1033 (unabr. ed. 2002). Black's Law Dictionary defines "hardship" as privation, suffering, or adversity. *Black's Law Dictionary* 734 (8th ed. 2004). Therefore, "hardship" as contained in this section means suffering, privation, or adversity. A financial hardship alone can create privation, suffering, or adversity. Thus, we agree with the board's construction of section 16.91(5) that a financial hardship is a hardship sufficient to justify a waiver under the statute.

**VI. Construing the Meaning of "Public Interest."**

The Code allows the board to grant a waiver of the requirement that a participating abstractor have a title plant upon a showing of hardship and a showing that the waiver clearly is in the public interest. Iowa Code § 16.91(5). The board determined the granting of the waiver in this case was clearly in the public interest. The board identified five

public interests that granting this waiver would effectuate. First, granting the waiver would increase competition among abstractors. Second, it would encourage the use of the title guaranty program throughout Iowa. Third, it would make the title guaranty program more competitive with out-of-state insurance. Fourth, it would improve the quality of the land-title system. Fifth, it would protect consumers.

The association claims the legislature did not contemplate these public interests as reasons to waive the title plant requirement. Therefore, it claims, the board misinterpreted the statute when it relied upon these public interests to waive the title plant requirement.

The legislature did not define "public interest" when it enacted the title guaranty program. It did indicate, however, the purpose of the program in its legislative findings. Iowa Code § 16.3(15). The legislature stated:

> The abstract-attorney's title opinion system promotes land title stability for determining the marketability of land titles and is a public purpose. A public purpose will be served by providing, as an adjunct to the abstract-attorney's title opinion system, a low cost mechanism to provide for additional guaranties of real property titles in Iowa. The title guaranties will facilitate mortgage lenders' participation in the secondary market and add to the integrity of the land-title transfer system in the state.

*Id.* Consistent with these legislative findings, the Iowa Title Guaranty Division declared its mission

> is to operate a program that offers guaranties of real property titles in order to provide, as an adjunct to the abstract-attorney's title opinion system, a low-cost mechanism to facilitate mortgage lenders' participation in the secondary market and add to the integrity of the land-title transfer system in the state.

Iowa Admin. Code r. 265—9.2.

After our review of the legislative findings and the mission statement of the division, we agree that the public interests as set forth by the board were consistent with the intent of the term "public interest" under section 16.91(5). By increasing competition among abstractors, the title guaranty program can drive down prices of abstracts making Iowa's abstract-attorney's title opinion system more cost efficient. Encouraging the use of the title guaranty program adds to the integrity of the land-title transfer system, thereby helping its consumers. Making the title guaranty program more competitive with out-of-state title insurance serves the public interest by decreasing the use of title insurance. Improving the quality of the land-title system serves the public by adding to the integrity of the title guaranty program and better serving its customers. Finally, protecting consumers serves the public interest.

Accordingly, we agree with the board's construction of the meaning of "public interest."

## VII.  Substantial Evidence Analysis.

The board determined Hendricks would suffer financially if the board required him to maintain a title plant and that the granting of Hendricks' application for a waiver of the forty-year title plant requirement effectuated the public interests it identified in its decision. The association claims that even if a financial hardship is a sufficient hardship and the board correctly identified the public interest envisioned by the legislature, substantial evidence does not support the board's findings.

We review a question of whether substantial evidence supports an agency's finding by examining the agency record as a whole. Iowa Code § 17A.19(10)(*f*). At oral argument, the association advised us that the

board did not record the proceedings, but kept minutes of its proceedings. The transmittal of the agency record filed in the district court did not include the minutes of the meeting. The minutes would have contained a summary of the proceedings, including a summary of the testimony of all persons testifying at the hearing. Without the minutes, we have no record to determine whether substantial evidence supports the agency's finding. It is the appellant's duty to make sure the reviewing court has an adequate record to decide an appeal. *In re F.W.S.*, 698 N.W.2d 134, 135 (Iowa 2005). The association failed to provide the district court or this court with the agency record; therefore, we must affirm the agency on the substantial evidence issue. *Alvarez v. IBP, Inc.*, 696 N.W.2d 1, 4 (Iowa 2005).

**VIII.  Disposition.**

We hold the board properly construed the terms "hardship" and "public interest" as used in Iowa Code section 16.91(5). We also find the record insufficient to conduct a substantial evidence review under section 17A.19(10)(*f*). Accordingly, we affirm the judgment of the district court affirming the decision of the board.

**AFFIRMED.**

All justices concur except Hecht, J., who takes no part.