# IN THE SUPREME COURT OF IOWA

No. 09–0716

Filed July 9, 2010

**JANE DOE,**

Appellant,

vs.

**IOWA DEPARTMENT OF HUMAN SERVICES,**

Appellee.

Appeal from the Iowa District Court for Des Moines County, Michael J. Schilling, Judge.

A mother appeals from a district court decision affirming an Iowa Department of Human Services' decision to place her name on the child abuse registry.  **REVERSED AND REMANDED WITH DIRECTIONS.**

Elizabeth A. Norris, Iowa City, Jessica J. Taylor and Michelle Mackel-Wiederanders, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Paul F. Kraus, Assistant Attorney General, for appellee.

Tina L.B. Fisher, Des Moines, for amici curiae Iowa Coalition Against Domestic Violence, Iowa Coalition Against Sexual Assault, Minnesota Coalition for Battered Women Family, The Family Violence Prevention Fund, and the National Coalition Against Domestic Violence.

Thomas W. Foley of Babich, Goldman, Cashatt & Renzo, P.C., Des Moines, for amicus curiae Children & Families of Iowa.

**WIGGINS, Justice.**

In this appeal, Jane Doe[1] seeks a ruling reversing the judgment of the district court affirming the Iowa Department of Human Services' (DHS) final decision finding Doe had committed child abuse and placing her name on the central child abuse registry.[2]  Specifically, the district court affirmed DHS's final decision finding Doe had committed child abuse by denying her child critical care due to Doe's failure to provide for the proper supervision of her child in 2001 and 2002, when she repeatedly exposed her child to the child's father, the perpetrator of numerous incidents of domestic abuse against Doe.

On appeal, Doe raises three issues as to why her name should not be on the child abuse registry.  First, she argues substantial evidence does not support the finding that she committed child abuse.  Next, Doe contends the legislature did not authorize DHS to place her name on the registry for failing to provide for the proper supervision of her child. Finally, she asserts DHS's practice of holding domestic violence victims responsible for the actions of their perpetrators is against public policy. Because we agree with Doe's contention that the legislature did not authorize DHS to place Doe's name on the registry for failing to provide for the proper supervision of her child, we do not consider Doe's other arguments on appeal.  Accordingly, we reverse the judgment of the district court, and remand the case to the agency to remove Doe's name from the child abuse registry.

---

[1]We have changed the name of the appellant pursuant to Iowa Court Rule 21.28 in order to keep the appellant's identity confidential.

[2]DHS did not contend Doe's challenge to her placement on the registry was untimely.

## I. Statutory Framework.

The outcome of this appeal depends on our interpretation of various statutes and rules dealing with child abuse and the child abuse registry. The first statute we need to interpret is chapter 232's definition of "child abuse." This statute defines "child abuse," in part, as:

> The failure on the part of a person responsible for the care of a child to provide for the adequate food, shelter, clothing *or other care necessary for the child's health and welfare* when financially able to do so or when offered financial or other reasonable means to do so.

Iowa Code § 232.68(2)(*d*) (2001)[3] (emphasis added).

DHS refers to this subsection of the definition of "child abuse" in shorthand by using the term "denial of critical care." *See* Iowa Admin. Code r. 441—175.21 (2001) (defining "denial of critical care"). In Iowa Administrative Code rule 441—175.21, DHS interprets the meaning of the "denial of critical care" definition of "child abuse" by enumerating eight circumstances that constitute a "denial of critical care." *Id.* The rule states in relevant part:

> *"Denial of critical care"* is the failure on the part of a person responsible for the care of a child to provide for the adequate food, shelter, clothing or other care necessary for the child's health and welfare when financially able to do so, or when offered financial or other reasonable means to do so, and shall mean any of the following:
>
> 1. Failure to provide adequate food and nutrition to the extent that there is danger of the child suffering injury or death.
>
> 2. Failure to provide adequate shelter to the extent that there is danger of the child suffering injury or death.
>
> 3. Failure to provide adequate clothing to the extent that there is danger of the child suffering injury or death.

---

[3]All references to the Iowa Code are to the 2001 Code unless otherwise noted.

4. Failure to provide adequate health care to the extent that there is danger of the child suffering injury or death. A parent or guardian legitimately practicing religious beliefs who does not provide specified medical treatment for a child for that reason alone shall not be considered abusing the child and shall not be placed on the child abuse registry. However, a court may order that medical service be provided where the child's health requires it.

5. Failure to provide the mental health care necessary to adequately treat an observable and substantial impairment in the child's ability to function.

6. Gross failure to meet the emotional needs of the child necessary for normal development.

7. *Failure to provide for the proper supervision of the child to the extent that there is danger of the child suffering injury or death, and which a reasonable and prudent person would exercise under similar facts and circumstances.*

8. Failure to respond to the infant's life-threatening conditions (also known as withholding medically indicated treatment) by providing treatment (including appropriate nutrition, hydration and medication) which in the treating physician's reasonable medical judgment will be most likely to be effective in ameliorating or correcting all conditions, except that the term does not include the failure to provide treatment (other than appropriate nutrition, hydration, or medication) to an infant when, in the treating physician's reasonable medical judgment any of the following circumstances apply: the infant is chronically and irreversibly comatose; the provision of the treatment would merely prolong dying, not be effective in ameliorating or correcting all of the infant's life-threatening conditions, or otherwise be futile in terms of the survival of the infant; the provision of the treatment would be virtually futile in terms of the survival of the infant and the treatment itself under the circumstances would be inhumane.

*Id.* (emphasis added). For the purposes of this opinion, we will assume, without deciding, substantial evidence supports DHS's finding that Doe committed child abuse under Iowa Code section 232.68(2)(*d*) for her failure to provide for the proper supervision of her child as defined in rule 441—175.21.

We must also consider the statute that governs placement on the child abuse registry providing:

> 2. If the alleged child abuse meets the definition of child abuse under section 232.68, subsection 2, paragraph "*a*" or "*d*", and the department determines the injury or risk of harm to the child was minor and isolated and is unlikely to reoccur, the names of the child and the alleged perpetrator of the child abuse and any other child abuse information shall not be placed in the central registry as a case of founded child abuse.
>
> 3. Except as otherwise provided in section 232.68, subsection 2, paragraph "*d*", regarding parents legitimately practicing religious beliefs, the names of the child and the alleged perpetrator and the report data and disposition data shall be placed in the central registry as a case of founded child abuse under any of the following circumstances:
>
> . . . .
>
> *f.* The department determines the acts or omissions of the alleged perpetrator meet the definition of child abuse under section 232.68, subsection 2, paragraph "*d*", involving failure to provide care necessary for the child's health and welfare, and any injury to the child or risk to the child's health and welfare was not minor or was not isolated or is likely to reoccur, in any of the following ways:
>
> > (1) Failure to provide adequate food and nutrition.
> >
> > (2) Failure to provide adequate shelter.
> >
> > (3) Failure to provide adequate health care.
> >
> > (4) Failure to provide adequate mental health care.
> >
> > (5) Gross failure to meet emotional needs.
> >
> > (6) Failure to respond to an infant's life-threatening condition.

Iowa Code § 232.71D(2), (3)(*f*).

Finally, we must consider DHS's rule interpreting the meaning of section 232.71D stating:

> Reports of child abuse where abuse has been confirmed shall be placed on the central abuse registry as founded child abuse for ten years under any of the circumstances specified by Iowa Code Supplement subsection 232.71D(3). Reports of

denial of critical care by failure to provide adequate clothing or failure to provide adequate supervision and physical abuse where abuse has been confirmed and determined to be minor, isolated, and unlikely to reoccur shall not be placed in the central abuse registry as a case of founded child abuse as specified by Iowa Code Supplement subsections 232.71D(2) and (3). *The confirmed abuse shall be placed on the registry unless all three conditions are met.* Minor abuse shall be placed on the registry if there is a prior confirmed abuse.

Iowa Admin. Code r. 441—175.39 (emphasis added).

## II. Scope of Review.

Rule 441—175.39 is DHS's interpretation of Iowa Code section 232.71D. DHS's interpretation requires that it must place all confirmed child abusers who fail to provide adequate supervision of their children on the registry unless the abuse is determined to be minor, isolated, and unlikely to reoccur. *Id.* This interpretation appears to conflict with Iowa Code section 232.71D(3)(*f*). Section 232.71D(3)(*f*) does not list failure to provide for the proper supervision of the child as a ground to include a confirmed child abuser on the registry. *See* Iowa Code § 232.71D(3)(*f*) (listing six grounds for placement on the registry).

To determine the scope of review, we must first determine whether the legislature, by a provision of law, clearly vested DHS with the authority to interpret Iowa Code section 232.71D. *Id.* § 17A.19(10)(*l*). If the legislature has clearly vested DHS with the authority to interpret the statute, we can only reverse if DHS's interpretation is irrational, illogical, or wholly unjustifiable. *Id.* On the other hand, if the legislature did not clearly vest DHS with the authority to interpret the statute, our review is for correction of errors at law. *Id.* § 17A.19(10)(*c*); *accord Iowa Land Title Ass'n v. Iowa Fin. Auth.*, 771 N.W.2d 399, 401–02 (Iowa 2009). The legislature has not explicitly given DHS the authority to interpret section

232.71D. Therefore, in order for us to find the legislature clearly vested DHS with the authority to interpret the statute, we

> must have a firm conviction from reviewing the precise language of the statute, its context, the purpose of the statute, and the practical considerations involved, that the legislature actually intended (or would have intended had it thought about the question) to delegate to the agency interpretive power with the binding force of law over the elaboration of the provision in question.

Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 63 rptr. cmt. (1998).

The legislature has granted DHS rulemaking authority to adopt rules and regulations necessary to carry into practice the programs of the department. Iowa Code §§ 217.3(6), .6. The legislature has also granted DHS the authority to "organize and staff the registry and adopt rules for its operation." *Id.* § 235A.14(1). Finally, the legislature has explicitly granted DHS the authority to place a founded child abuse report on the registry if the report meets the requirements of section 232.71D. From these statutes authorizing DHS to act, we must determine if the legislature clearly vested DHS with the authority to interpret section 232.71D.

Section 17A.19(10)(*c*) became effective July 1, 1999. 1998 Iowa Acts ch. 1202, § 46. At the time section 17A.19(10)(*c*) became effective, the legislature required all agencies to adopt rules regarding the programs implemented by the agency. Iowa Code § 17A.3 (1999). Therefore, if we were to hold the legislature's general grant of rulemaking authority in and of itself gives an agency interpretive powers over the statutes it administers, we would make section 17A.19(10)(*c*) superfluous. *See Zimmer v. Vander Waal*, 780 N.W.2d 730, 734 (Iowa

2010) (recognizing one of the fundamental rules of statutory interpretation is we will not interpret a statute to make any part of it superfluous unless no other interpretation is reasonably possible). Consequently, we must look elsewhere to determine if the legislature clearly vested DHS with the authority to interpret section 232.71D.

In granting DHS rulemaking authority regarding the registry, the legislature used the following language: "organize and staff the registry and adopt rules for its operation." Iowa Code § 235A.14(1). "Operation" means "performance of a practical work or of something involving the practical application of principles or processes." *Merriam-Webster's Collegiate Dictionary* 869 (11th ed. 2003). The practical application of principles and processes regarding the registry requires DHS to interpret section 232.71D when it makes rules regarding the operation of the registry. Thus, we have a firm conviction the legislature actually intended to delegate to DHS interpretive power with the binding force of law over the elaboration of Iowa Code section 232.71D. Accordingly, we will examine DHS's interpretation of the statute to determine if its interpretation is irrational, illogical, or wholly unjustifiable. Iowa Code § 17A.19(10)(*l*).

### III. Analysis.

Rule 441—175.39 interprets section 232.71D as mandating that abuse categorized as denial of critical care, including failure to provide adequate supervision, must be placed on the child abuse registry unless the abuse is minor, isolated, and unlikely to reoccur. Iowa Admin. Code r. 441—175.39. Thus, this interpretation begins with a presumption that DHS is required to place all founded reports of denial of critical care

child abuse on the registry unless the abuse is minor, isolated, and unlikely to reoccur.

To determine if DHS's interpretation of section 232.71D is irrational, illogical, or wholly unjustifiable, we must apply our rules of statutory interpretation. The purpose of statutory interpretation is to determine the legislature's intent. *State v. McCoy*, 618 N.W.2d 324, 325 (Iowa 2000). We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law. *Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 426 (Iowa 2002). We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. *State v. Allen*, 708 N.W.2d 361, 366 (Iowa 2006). When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases. *Rojas v. Pine Ridge Farms, L.L.C.*, 779 N.W.2d 223, 231 (Iowa 2010). We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004).

Prior to 1997 the legislature required DHS to place all confirmed reports of child abuse on the registry. *See, e.g.*, Iowa Code §§ 232.70(4)(*b*), (*c*), .71(8) (1993). On May 3, 1995, the legislature amended chapter 232 by adding section 71A, a pilot program mandating DHS to develop an assessment-based approach for responding to child abuse reports. 1995 Iowa Acts ch. 147, § 5. Under this pilot program, upon receipt of a child abuse report, DHS was required to perform an assessment. Iowa Code § 232.71A(3) (Supp. 1995). After performing the assessment, if DHS determined "the child suffered significant injury or was placed in great risk of injury," then DHS was required to place the

founded child abuse report on the registry. *Id.* § 232.71A(7)(*a*). The pilot program provided, "In any other case, the child abuse information in an assessment *shall not* be placed in the central registry . . . ." *Id.* § 232.71A(7)(*b*) (emphasis added). It is clear the legislature initially sought, at least on a pilot project basis, to limit placement on the registry to those cases where the child suffered significant injury or was placed in great risk of injury.

Effective July 1, 1998, the legislature expanded this assessment-based approach statewide by adopting Iowa Code section 232.71D. 1997 Iowa Acts ch. 176, §§ 5, 43. In the legislative summary of this provision, the legislature explained that prior to the enactment of this provision it had "enacted provisions for utilization of an assessment-based approach on a pilot project basis." 1997 Summary of Legislation, Children & Youth, H.F. 698, http://www.legis.state.ia.us/GA/77GA/Session.1/Summary/chil.htm (last visited July 2, 2010). The summary explained that unlike the past investigation-based approach, under the new assessment-based approach, "if child abuse was determined to have occurred, only serious cases were placed in the registry." *Id.* Furthermore, it explained that section 232.71D specified in greater detail than the original pilot project, the criteria for placement of information on the registry if there is a finding of child abuse. *Id.*

In addition, the summary described the interplay between subsections (2) and (3) of section 232.71D. First, it explained section 232.71D(2) provides if DHS determines an incident of alleged child abuse was minor, isolated, and unlikely to reoccur, the alleged abuser shall not be placed on the registry. *Id.* The summary then explained section 232.71D(3) is based on the statutory definition of child abuse and includes a list "of the specific incidents and determinations that would

result in the placement of names and other child abuse information in the central registry." *Id.* Finally, the summary explained that a person currently listed on the registry "for a circumstance that would not require placement in the registry under the new criteria," may request DHS to review the case. *Id.* This summary evidences a legislative intent that DHS is not required to place all founded cases of child abuse on the registry.

Moreover, at the time the legislature enacted section 232.71D(3), rule 441—175.21 listed eight different criteria under which a person can be deemed a child abuser for a "denial of critical care." One of the eight criteria includes "failure to provide for the proper supervision of the child." Iowa Admin. Code r. 441—175.21 (1995). The other seven criteria are nearly identical to the criteria contained in the present rule. *Id.* However, when the legislature enacted section 232.71D(3)(*f*), it only included six of those criteria for placing a person on the child abuse registry. "Failure to provide for the proper supervision of the child" was one of the criteria the legislature chose not to include in section 232.71D(3)(*f*) for placing a person on the child abuse registry. The legislature may express its intent by the omission, as well as the inclusion of terms. In other words, when the legislature expressly mentions one thing, it implies the exclusion of other things not specifically mentioned. *Kucera v. Baldazo*, 745 N.W.2d 481, 487 (Iowa 2008).

We conclude when the legislature failed to list "failure to provide for the proper supervision of the child" in section 232.71D(3)(*f*) as a ground for placement of a person's name on the registry, the legislature intended that DHS shall not place a person on the child abuse registry

who has failed to provide for the proper supervision of his or her child.[4] Accordingly, DHS's interpretation of Iowa Code section 232.71D in rule 441—175.39, requiring that all "confirmed abuse shall be placed on the registry unless all three conditions are met" is irrational, illogical, and wholly unjustifiable because DHS's interpretation extends, enlarges, and otherwise changes the legislative intent of section 232.71D. Therefore, DHS acted without authority in placing Doe on the registry contrary to the provisions of section 232.71D(3). Consequently, even if we assume substantial evidence supports DHS's finding that Doe committed child abuse under Iowa Code section 232.68(2)(*d*) for her failure to provide for the proper supervision of her child as defined in rule 441—175.21, Doe's name should not have been placed on the child abuse registry.

## IV. Disposition.

We conclude DHS should not have placed Doe on the child abuse registry because Iowa Code section 232.71D does not permit DHS to place on the registry a person found to have committed child abuse by failing to provide for the proper supervision of a child, as defined in rule 441—175.21, solely for that reason. DHS and the district court erred in holding otherwise. Therefore, we reverse the decision of the district court upholding DHS's decision to place Doe's name on the registry and remand the case to the district court, which must then return the case to DHS and order DHS to remove Doe's name from the registry and purge any record that her name was on the registry.

**REVERSED AND REMANDED WITH DIRECTIONS.**

---

[4]Our decision today does not preclude the placement of a person who has failed to provide for the proper supervision of a child on the central child abuse registry if the requirements of another subsection of Iowa Code section 232.71D(3) have been met.