# In the Iowa Supreme Court

---

No. 24–2031

Submitted December 17, 2025—Filed February 13, 2026

---

**Amanda Cooke,**

Appellee,

vs.

**Iowa Department of Health and Human Services,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, judge.

Iowa Department of Health and Human Services appeals a judicial review order reversing a founded child abuse assessment under Iowa Code section 232.68(2)(*a*)(4)(b). **Reversed.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General, and Tabitha J. Gardner (argued), Assistant Attorney General, for appellant.

Eric S. Mail (argued) and Eric D. Puryear of Puryear Law, P.C., Davenport, for appellee.

**Oxley, Justice.**

A five-month-old child died from anoxic brain injury after she was found with her face in a blanket. She had been placed down for a nap by Amanda Cooke, a state-registered childcare provider. To become a category "B" registered childcare provider, Cooke was required to comply with certain protocols, including specific "safe sleep" regulations and facility requirements. The Iowa Department of Health and Human Services (HHS) issued a founded child abuse assessment for denying the infant critical care by failing to provide proper supervision. Proper supervision is statutorily defined as the supervision "that a reasonable and prudent person would exercise under similar facts and circumstances." Iowa Code § 232.68(2)(*a*)(4)(b) (2023).

On judicial review, the district court reversed the founded child abuse assessment on the basis that "a reasonable and prudent person" is an objective "generic person" standard that does not consider the training or knowledge of the particular person at issue. The district court remanded the case to HHS to reconsider the assessment under this revised standard.

HHS appealed. On our review, we agree with HHS's application of Iowa law when it found that Cooke denied the child critical care under section 232.68(2)(*a*)(4)(b). We therefore reverse the district court.

### I. Factual Background and Proceedings.

Cooke has been a category "B" registered childcare provider in Manchester since 2020. *See* Iowa Code § 237A.3A. She provided child daycare services in her home for families, some of whom received childcare assistance benefits from HHS. *See id.* § 237A.13. As a registered childcare provider, Cooke was required to follow HHS regulations.

For instance, Cooke was required—and agreed—to "follow safe sleep practices as recommended by the American Academy of Pediatrics for infants under the age of one." Iowa Admin. Code r. 441—110.8(5)(*a*). The infant must be placed on their back to sleep on a firm mattress with a tight-fitted sheet. *Id.* r. 441—110.8(5)(*a*)(1)–(2). "No toys, soft objects, stuffed animals, pillows, bumper pads, blankets, or loose bedding shall be allowed in the sleeping area with the infant." *Id.* r. 441—110.8(5)(*a*)(4). The registered childcare provider must actively monitor the sleeping infant by sight and sound. *Id.* r. 441—110.8(5)(*a*)(6). HHS conducts annual compliance visits at registered childcare providers' homes to ensure that they know of and abide by these regulations.

One of the children in Cooke's care, five-month-old Q.S., was dropped off by her mother at Cooke's home around 6:00 a.m. on October 9, 2023—as was her customary drop-off time most days. Cooke played with Q.S. for about half an hour and then took Q.S. to the basement to put her down for her morning nap in a Pack 'n Play. Typically, the Pack 'n Play where Q.S. slept was placed in Cooke's bedroom on the main floor. But Cooke's husband was using a wheelchair while recovering from an injury at the time, and there was not enough room for the Pack 'n Play in the bedroom. So Cooke temporarily used the basement for Q.S.'s naps, even though the basement was only supposed to be used for emergency tornado drills because it did not have the necessary exits to be used as part of the daycare. Cooke did not use any type of baby monitor in the basement and could not observe Q.S. by sight or by sound. Cooke could only check on Q.S. by going down to the basement.

Around 7:00 a.m., Cooke checked on Q.S. in the Pack 'n Play. Q.S. was sleeping but fussed a bit when Cooke looked after her. Cooke returned to the basement around 8:30 a.m. to wake Q.S. up and feed her breakfast, but Q.S. did

not respond when Cooke rubbed her back. There was a large blanket in the Pack 'n Play with Q.S., and Q.S. was rolled over on her stomach with her face up against the blanket. Cooke claimed that she left the blanket draped over the side of the Pack 'n Play, with half of it hanging inside and the other half hanging outside. The blanket ultimately ended up inside the Pack 'n Play covering Q.S.'s face.

Q.S. was limp and pale when Cooke turned her over. Cooke immediately started to perform CPR on Q.S. while her husband called 911. First responders and emergency medical personnel continued resuscitation efforts and transported Q.S. to Regional Medical Center in Manchester. She regained a heartbeat and was transferred to the University of Iowa Hospitals and Clinics, but she died the next day. Her cause of death was listed as "[a]noxic brain injury due to resuscitated cardiopulmonary arrest due to combined effects of positional asphyxia and smothering."

HHS issued Cooke a notice of founded child abuse assessment on November 6 for denying critical care to Q.S. by failing to provide adequate supervision. HHS concluded that Cooke was required to be placed on the central child abuse registry because the risk to the child's health and welfare was neither minor nor isolated and not unlikely to reoccur. Iowa Code § 232.71D(2), (3)(*a*)(2). HHS also revoked Cooke's child care registration and her child care assistance provider agreement. Cooke timely appealed.

An administrative law judge (ALJ) issued a proposed decision upholding HHS's determination to revoke Cooke's childcare registration due to her failure to follow HHS's safe sleep regulations. But it reversed the agency's determinations that Cooke (1) denied critical care to Q.S. by failing to provide proper supervision; (2) failed her record check evaluation as a result of the denial

of critical care; and (3) needed to have her childcare assistance provider agreement revoked. With respect to the denial of critical care finding, the ALJ noted that Cooke's actions must be measured against an objective "reasonable and prudent person" standard that did not consider her "greater training by virtue of her status as a registered day care provider." The ALJ did not believe that a parent would be found to have denied critical care by leaving a blanket in their five-month-old child's sleeping area. Reasoning that Cooke should be judged by the same objective standard, the ALJ concluded that Cooke likewise did not deny critical care.

The case proceeded to the HHS Director, who issued a final agency decision rejecting the ALJ's proposed order and affirming HHS's original child abuse determination. The Director reasoned:

> [Cooke] had a higher duty of care than an ordinary individual due to her specialized knowledge and expertise. [Cooke] was employed and trained as a professional in providing a safe environment for a child. Her actions must be judged in comparison to a reasonable, trained professional in the same field, and what a reasonable, trained professional would have done in similar circumstances.

From there, the Director concluded that a reasonable and prudent person under similar facts and circumstances would not have violated safe sleep practices by leaving a blanket in close proximity to a five-month-old child who was also sleeping in an area of the house where the baby could not be monitored by either sight or sound. The Director therefore found that Cooke denied critical care by failing to provide proper supervision.

Cooke petitioned for judicial review in the Iowa District Court for Polk County. The only issue raised in district court was the proper legal standard for determining what it means "to provide proper supervision of a child that a reasonable and prudent person would exercise under similar facts and

circumstances" under Iowa Code section 232.68(2)(*a*)(4)(b). The district court reversed the Director's final agency decision and concluded that the reasonable and prudent person standard did not allow for consideration of Cooke's training and experience as a childcare provider. Because the standard is an objective one, the court concluded that the agency cannot reference a person's special qualifications to assess the reasonableness of their supervision. The district court therefore remanded the case to the agency so it could apply a legal standard without reference to Cooke's training and experience.

HHS appealed, and we retained the case.

**II. Analysis.**

**A. Standard of Review.** This appeal turns on HHS's interpretation of Iowa Code section 232.68(2)(*a*)(4)(b). "We review an agency's interpretation of a statute for errors at law unless the legislature has clearly vested interpretive authority in the agency." *Calcaterra v. Iowa Bd. of Med.*, 965 N.W.2d 899, 903 (Iowa 2021); *accord* Iowa Code § 17A.19(10)(*c*), (*l*). We give deference to an agency's interpretation if the statute expressly gives the agency interpretive authority or if the interpretation involves a term of art within the agency's area of expertise such that the agency's interpretative authority can be fairly implied. *Renda v. Iowa C.R. Comm'n*, 784 N.W.2d 8, 14 (Iowa 2010). Conversely, we owe no deference to an agency's legal conclusions when it interprets a term with independent legal meaning outside the agency's expertise. *Id.*; *see also Grant v. Iowa Dep't of Hum. Servs.*, 722 N.W.2d 169, 173 (Iowa 2006) (noting we "may substitute our own interpretation of the law for the [department of human services']" interpretation of whether issue preclusion applies).

Cooke was found to have committed child abuse for failing to provide adequate supervision. *See* Iowa Code § 232.68(2)(*a*)(4)(a) (defining "child abuse" to include "[t]he failure on the part of a person responsible for the care of a child

to provide for the adequate . . . supervision . . . necessary for the child's health and welfare"). "[F]ailure to provide for the adequate supervision of a child means the person failed to provide proper supervision of a child that a reasonable and prudent person would exercise under similar facts and circumstances and the failure resulted in direct harm or created a risk of harm to the child." *Id.* § 232.68(2)(*a*)(4)(b).

We have previously recognized that the general assembly gave HHS "interpretive power with the binding force of law over the elaboration of Iowa Code section 232.71D," concerning the founded child abuse central registry. *Doe v. Iowa Dep't of Hum. Servs.*, 786 N.W.2d 853, 858 (Iowa 2010). Although section 232.71D cites the relevant statute in this case—section 232.68(2), defining "child abuse"—it does so only to the extent it requires that child abuse information be recorded in a central registry. *See* Iowa Code § 232.71D(2). HHS's express rulemaking authority extends to the operation of the child abuse registry. *See id.* § 235A.14(1) ("The department shall organize and staff the registry and adopt rules for its operation."). In *Doe v. Iowa Department of Human Services*, we concluded that HHS had been given interpretive authority only over "[t]he practical application of principles and processes regarding the registry." 786 N.W.2d at 858. We did not conclude that HHS was vested with interpreting section 232.68(2). Rather, we merely assumed that HHS's finding that section 232.68 was violated was supported by substantial evidence because its interpretation did not matter for the disposition of that case. *See id.* at 856, 858, 860.

With the issue now directly before us, we conclude that HHS has not been vested with interpretative authority over the definition of "failure to provide for the adequate supervision of a child" contained in section 232.68(2)(*a*)(4)(b). The fighting issue in this appeal is the legal standard for assessing the type of

supervision "a reasonable and prudent person would exercise under similar facts and circumstances." Iowa Code § 232.68(2)(*a*)(4)(b). A reasonable and prudent person standard is the type of "independent legal definition" we have found to be "not uniquely within the subject matter expertise of the agency." *Renda*, 784 N.W.2d at 14 (interpreting "employee" and "dwelling" without deference to the agency's legal conclusions); *see also Iowa Land Title Ass'n v. Iowa Fin. Auth.*, 771 N.W.2d 399, 401–02 (Iowa 2009) ("hardship" and "public interest"); *State v. Pub. Emp. Rels. Bd.*, 744 N.W.2d 357, 359–60 (Iowa 2008) ("willful" and "non-willful"); *Waterloo Educ. Ass'n v. Iowa Pub. Emp. Rels. Bd.*, 740 N.W.2d 418, 419–20 (Iowa 2007) ("mandatory"); *Doe v. Iowa Bd. of Med. Exam'rs*, 733 N.W.2d 705, 708 (Iowa 2007) ("confidential"); *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 509 (Iowa 2003) ("dependent adult").

We therefore interpret section 232.68(2)(*a*)(4)(a)–(b) without deference to the agency's interpretation of the statute. *See* Iowa Code § 17A.19(10)(*c*) ("The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant other appropriate relief from agency action . . . if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action is . . . [b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency.").

**B. The Reasonable and Prudent Person Under Similar Facts and Circumstances.** HHS is charged with maintaining "a central registry of founded child abuse assessments." *Grant*, 722 N.W.2d at 176 (describing the assessment process and requirements for placement on the central registry); *see also* Iowa Code § 235A.14(1) ("There is created within the state department of human

services a central registry for certain child abuse information. The department shall organize and staff the registry and adopt rules for its operation."). Subject to certain exceptions, a founded assessment of child abuse must be placed in the central registry. *See* Iowa Code § 232.71D(2). The central registry is a confidential registry used, inter alia, for record checks associated with particular types of employment, including those involving care of dependent children. *See id.* § 235A.15.

HHS issued a founded assessment of child abuse against Cooke based on its determination that she failed to provide adequate supervision. *See id.* § 232.68(2)(*a*)(4)(a) (defining "child abuse" to include "[t]he failure on the part of a person responsible for the care of a child to provide for the adequate . . . supervision . . . necessary for the child's health and welfare"). "[F]ailure to provide for the adequate supervision of a child means the person failed to provide proper supervision of a child that a reasonable and prudent person would exercise under similar facts and circumstances . . . ." *Id.* § 232.68(2)(*a*)(4)(b). Failing to provide adequate supervision is limited to "person[s] responsible for the care of a child." *Id.* § 232.68(2)(*a*)(4)(a). Such persons can include a wide array of people: parents and guardians; employees of facilities providing care for a child, including hospitals or childcare facilities; and "[a]ny person providing care for a child, but with whom the child does not reside, without reference to the duration of the care." *Id.* § 232.68(8) (defining "[p]erson responsible for the care of a child"); *see also State v. Lindaman*, ___ N.W.3d ___, ___, 2025 WL 3718817, at *10 (Iowa Dec. 23, 2025) (holding that a grandfather was "responsible for the care of" his seven-year-old granddaughter within the definition of section 232.68(8)(*d*) when she visited his home without

her parents and he was the only adult home at the time he allegedly sexually abused her).

We are tasked with deciding how to determine the supervision that "a reasonable and prudent person would exercise under similar facts and circumstances." Iowa Code § 232.68(2)(*a*)(4)(b). Cooke focuses on the "reasonable and prudent person" part of the definition, arguing that considering her specialized knowledge and training as a registered childcare provider would turn the standard into a subjective one when it should be objective. Cooke would have us limit the "facts and circumstances" we can consider to those outside the individual. So, she argues, we should only consider facts like the child's age, the location of the incident, and the risk factors associated with the equipment at issue. The district court agreed, applying a "generic person" standard that disregarded any characteristics specific to Cooke, including her training or her role as a registered childcare provider. HHS, on the other hand, argues that because the statute applies to a broad category of caregivers, the particular type of caregiver involved—here, a state-registered child care provider—is part of the "facts and circumstances" that we must consider in determining whether "a reasonable and prudent person" would have engaged in the same conduct.

A "reasonable and prudent person" standard is, as the parties agree, an objective one. But defining the reasonable person in a specific case by distinguishing between an objective and subjective standard is not much help. Indeed, the parties cite competing law review articles to support their respective positions about whether Cooke's characteristics as a registered childcare provider with specialized training regarding safe sleep for infants are relevant to

the reasonable and prudent person standard.[1] The standards discussed in the academic commentary arise most often in the tort context. Here, we are dealing with a statutory directive to apply a "reasonable and prudent person" standard "under similar facts and circumstances." Iowa Code § 232.68(2)(*a*)(4)(b).

Rather than flounder in the morass of trying to determine which, if any, of a person's characteristics may be considered in applying an objective—as opposed to a subjective—standard, we instead focus on the specific language used by the general assembly in defining adequate supervision. *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) (interpreting a statute "is necessarily a textual inquiry as only the text of a piece of legislation is enacted into law"). We repeat the statutory text here: "[F]ailure to provide for the adequate supervision of a child means the person failed to provide proper supervision of a child that a reasonable and prudent person would exercise under similar facts and circumstances." Iowa Code § 232.68(2)(*a*)(4)(b).

Cooke argues that the statute identifies one "reasonable and prudent *person*" standard. Because that same standard applies to different types of caregivers, she argues that the reasonable and prudent person is necessarily the

---

[1] *Compare* Christopher Brett Jaeger, *The Empirical Reasonable Person*, 72 Ala. L. Rev. 887, 895 (2021) ("[T]he reasonable person standard is generally understood as an objective standard rather than a subjective one. . . . [This] means the standard is typically not tailored to the particulars of the defendant; the defendant's conduct is compared to the reasonable conduct of a *generic person*, rather than to the reasonable conduct of a person *with the defendant's specific attributes*."), *with* Christopher Jackson, *Reasonable Persons, Reasonable Circumstances*, 50 San Diego L. Rev. 651, 659–60 (2013) ("[Professor Alafair] Burke expounds a second way of defining the objective/subjective distinction. The terms might be used 'to describe whether a jurisdiction considers circumstances that are specific to an individual defendant when applying the universal requirement that the defendant's beliefs be reasonable.' 'In contrast,' she says, 'a wholly "objective" standard of reasonableness compares the defendant's beliefs to those of a hypothetical reasonable person, without taking into account the individual circumstances of the defendant.' But this is nonsensical: how could we ask what a reasonable person would do given the circumstances if we incorporate none of the defendant's circumstances?" (quoting Alafair S. Burke, *Rational Actors, Self-Defense, and Duress: Making Sense, Not Syndromes, Out of the Battered Woman*, 81 N.C. L. Rev. 211, 287 (2002))).

same hypothetical person—regardless of whether the accused caregiver is a parent, a registered childcare provider, or a friend of the family. Had the general assembly used a more definite term—such as "reasonable and prudent *parent*"—we might agree. That was the case in Colorado, where the relevant statute "provide[d] that, to constitute child abuse or neglect, a 'child's parents, legal guardian, or custodian' must 'fail[ ] to take the same actions . . . that a *prudent parent* would take." *Ansel v. Dep't of Hum. Servs.*, 480 P.3d 758, 765 (Colo. App. 2020) (alteration and omission in original) (emphasis added) (quoting Colo. Code § 19-1-103(1)(a)(III)). In rejecting the agency's consideration of two licensing requirements applicable to licensed childcare providers to determine whether a licensed provider engaged in child abuse, the court explained that "the statute specifically refers to how a 'parent'—not a licensed child care provider—would act." *Id.* Because the statute did "not reference any other statute or any department regulation for guidance as to how a 'prudent parent' would act," the court concluded that "the statute simply provides that, for purposes of a finding of institutional abuse or neglect, child abuse or neglect can be found where one has failed to act as a prudent parent would under the circumstances." *Id.*

By contrast, our statute identifies the standard as a "reasonable and prudent person" using a general term—person—that applies to any of the people identified in section 232.68(8). Parents, guardians, employees of childcare providers or hospitals, and grandparents are all "persons." The same is not true of the Colorado statute's identification of a "prudent parent" standard. The Colorado statute applies to parents, guardians, and custodians, but guardians and custodians are not necessarily parents. By identifying the standard as that of a "prudent parent," the Colorado legislature made clear that

even nonparents needed to be held to the same standard of a parent—nothing more, nothing less. *See id.* at 765. In reaching this conclusion, the Colorado court rejected the agency's "suggestion that, like the reasonable person standard, the circumstances of one's profession must also be considered under the 'prudent parent' standard where one is acting in a professional capacity" because the court was bound by "[t]he plain language of the statute[, which] specifically refers to how a prudent 'parent' would act, not a prudent 'professional,' or, more broadly, a prudent 'person.' " *Id.* (discussing Colorado Code § 19-1-103(1)(a)(III)).

At a minimum, the standard in section 232.68(2)(*a*)(4)(b) is ambiguous. *See Est. of Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, 838 (Iowa 2023) (explaining that ambiguity arises when reasonable minds can construe the meaning of a statute differently). But we need not tarry on how to define the "reasonable and prudent person" because that is not the entirety of the statute. We focus instead on the standard's qualifying phrase: "under similar facts and circumstances." Iowa Code § 232.68(2)(*a*)(4)(b); *accord In re Chapman*, 890 N.W.2d 853, 857 (Iowa 2017) ("[W]e apply the fundamental rule of statutory construction that we should not construe a statute to make any part of it superfluous.").

The facts and circumstances are not limited to only facts outside of the individual as identified by Cooke: that Q.S. was five months old and put down for her nap in a Pack 'n Play in the basement outside of her caretaker's observation with a blanket draped over the side and no supervision for close to an hour. The facts and circumstances must also include the circumstances under which Q.S. came to be in Cooke's care. Even though the reasonable and prudent person standard applies equally to the wide array of persons who can

fall within the group of people responsible for the care of a child under section 232.68(8), whether a child was dropped off in a busy emergency room in the middle of a snowstorm or left with an elderly neighbor after her parent suffers a medical emergency are certainly "facts and circumstances" relevant to the reasonable person inquiry.

Here, as the HHS Director found, those circumstances include that Q.S. "had been placed by her parents with a trained, experienced, state-registered child care provider who was being compensated to perform one task" and that "[t]his registered child care provider was to properly supervise the child care children in her registered child development home." The circumstances of entrusting a child to be supervised by a state-registered childcare provider include that the provider was required to complete a preservice program that included instruction on safe sleep. It also includes the circumstance that the state-registered provider would have agreed to abide by the rules and regulations in chapter 237A of the Iowa Code and chapter 110 of the Iowa Administrative Code, which govern safe sleep practices and childcare facility requirements.

These circumstances are necessarily present every time a state-registered childcare provider supervises children; they do not change based on the specific caregiver's knowledge or subjective beliefs, including those about the risks of putting an infant down for a nap with a blanket in her crib. In other words, considering these circumstances—external to Cooke—does not turn this objective standard into a subjective one. *See, e.g., Thurman v. Applebrook Country Dayschool, Inc.*, 604 S.E.2d 832, 835 (Ga. 2004) (explaining that "the standard of care in a negligent childcare supervision case is that of a reasonably prudent person under like circumstances" and describing "the circumstances of this case" to include "when the sleeping infant is one of

many in a daycare setting"); *cf. Nicholson v. Scoppetta*, 820 N.E.2d 840, 846 (N.Y. 2004) (reviewing charges of child neglect against a mother, who was a victim of domestic abuse, under "the reasonable and prudent person in similar circumstances" standard and explaining that although the reasonable person is not identified as the reasonable battered woman, the court must still consider as relevant circumstances the "risks attendant to leaving, if the batterer has threatened to kill her if she does; risks attendant to staying and suffering continued abuse; risks attendant to seeking assistance through government channels, potentially increasing the danger to herself and her children; risks attendant to criminal prosecution against the abuser; and risks attendant to relocation").

The district court refused to consider any circumstances that might lead it to apply the reasonable person standard differently to a childcare provider than to a parent, echoing the ALJ's concerns that a parent who left a blanket draped over the edge of their child's crib would surely not be placed on the central registry. But in doing so, the district court scrubbed the record clean of nearly any facts and circumstances, applying a "generic person" standard using the lowest common denominator of what any "person" would do.

The HHS Director, on the other hand, sufficiently limited consideration to objective circumstances that applied to all state-registered childcare providers. While the Director considered Cooke's specific training and her recent annual compliance check during which she would have been instructed again about safe sleep, those considerations were not critical to the Director's conclusion. The denial of critical care was not because Cooke was held to a "higher standard." It was instead because Cooke did not provide proper supervision in this case when she violated the safe sleep practices she had agreed to follow as a

compensated state-registered childcare provider. We therefore uphold HHS's founded child abuse assessment against Cooke.

### III. Conclusion.

For the reasons above, we reverse the district court's order. Cooke "failed to provide proper supervision of a child that a reasonable and prudent person would exercise under similar facts and circumstances" for purposes of Iowa Code section 232.68(2)(*a*)(4)(b).

**Reversed.**