# IN THE SUPREME COURT OF IOWA

No. 10–0502

Filed July 6, 2012

**THE WALDINGER CORPORATION,**
**EMCASCO INSURANCE COMPANY,** and
**SECOND INJURY FUND OF IOWA,**

Appellants,

vs.

**MICHAEL B. METTLER,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Artis I. Reis, Judge.

Workers' compensation claimant seeks further review of court of appeals decision reversing workers' compensation commissioner's award of healing period benefits. **COURT OF APPEALS DECISION AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; AND CASE REMANDED.**

D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellants Waldinger Corporation and Emcasco Insurance Company.

Thomas J. Miller, Attorney General, and Deborah M. Stein, Assistant Attorney General, for appellant Second Injury Fund.

Harry W. Dahl, Des Moines, for appellee.

**HECHT, Justice**.

On further review, we are asked to determine whether Iowa's workers' compensation statute allows a claimant to recover healing period benefits—after he has reached maximum medical improvement and returned to substantially similar work following a work-related injury—for a period of approximately thirteen weeks of postsurgical convalescence during which he was unable to work. The workers' compensation commissioner awarded such benefits in this case, but the court of appeals reversed the award on the ground that Iowa Code section 85.34(1) (2011) does not authorize the benefits under the circumstances of this case.[1] We conclude the statute does authorize an award of healing period benefits in this case. Accordingly, we vacate that portion of the decision of the court of appeals, affirm the district court's judgment affirming the award, and remand for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

Upon graduation from high school in 1969, Michael Mettler began working as a plumber. After five years, he became a journeyman plumber in 1974. He joined the Army reserves and was called to active duty in the early 1980s. While in the military service, he fell from a stepladder and landed on his elbows, breaking both upper extremities and requiring surgery. He also injured his right ankle during his service. Mettler remained on active military duty until 2001 when he received an honorable discharge.

---

[1]The commissioner's award occurred in 2009. However, because there have been no substantive changes in chapter 85 material to our decision, we will refer to the 2011 Code unless otherwise indicated.

Mettler returned to work as a union plumber for the Waldinger Corporation. Soon after, he reported pain in his right ankle which he attributed to walking on uneven construction sites and climbing ladders and scaffolding. Mettler and Waldinger stipulated that Mettler sustained a work-related injury to his right lower extremity on August 9, 2001. In January 2002, Dr. Lee diagnosed posterior talar dome lesions and discussed with Mettler options including restricting activities, transferring to a desk job, or having surgery. Mettler opted for surgery.

On February 6, 2002, Dr. Lee performed surgery which included medial malleolar osteotomy, ankle arthrotomy with excision of multiple loose bodies, repair of an OCD lesion, and an osteochondral graft. Dr. Lee's postsurgical diagnosis included talar dome lesions, arthritis, and ankle synovitis. Mettler received some relief from the surgery and, after a period of convalescence, returned to work at Waldinger on May 10, 2002.

In July 2002, Mettler saw Dr. Lee again and again reported right ankle discomfort. Dr. Lee recommended a second ankle surgery. On September 25, 2002, Dr. Lee performed arthroscopic surgery with extensive debridement of degenerative changes and synovitic tissue in Mettler's right ankle. Dr. Lee noted significant degenerative changes during the arthroscopic procedure and predicted Mettler's right ankle would likely get progressively worse over time. Dr. Lee released Mettler to return to work on October 11, 2002, and informed him that he had reached maximum medical improvement (MMI) on November 15, 2002. Dr. Lee rated Mettler's right lower extremity permanent impairment at five percent in a letter to Waldinger's workers' compensation insurer on December 24, 2002.

Mettler "turned" his ankle in February 2003 and returned to Dr. Lee. Mettler reported on this occasion that he still had significant pain and discomfort in his ankle. In October of 2003, Dr. Lee suggested a series of injections which were administered in early 2004. Mettler received little if any relief from the injections, and Dr. Lee recommended Mettler limit his physical activity on his right ankle as much as possible and informed Mettler that work in a seated position was most appropriate for him.

On July 1, 2004, Dr. Lee performed a second right ankle arthroscopy with extensive debridement. Mettler responded well to this surgery and, after a healing period, returned to work for Waldinger. After seeing Mettler on April 6, 2005, Dr. Lee wrote to Waldinger expressing his opinion that he expected Mettler to experience ankle problems in the future and have worsening degenerative changes that might require ankle fusion or replacement. Dr. Lee's letter reported that Mettler was again at maximum medical improvement and rated his permanent impairment at seven percent of the right lower extremity.

Mettler again consulted Dr. Lee on June 30, 2005, with right ankle complaints, and in September 2005, Dr. Lee opined an ankle fusion or replacement were among the possible treatment options. Mettler sought an independent medical examination with Dr. Kuhnlein. Dr. Kuhnlein diagnosed osteoarthritis with chronic pain and an unstable ankle joint, concluded Mettler had reached MMI, and agreed with Dr. Lee's prediction that Mettler would need right ankle arthrodesis in the future. Dr. Kuhnlein rated Mettler's impairment at thirteen percent to the right lower extremity.

Mettler's employment with Waldinger ended in 2006, but he continued working as a plumber for other employers. In October of

2006, Mettler filed an original notice and petition with the Iowa Workers' Compensation Commissioner alleging a claim against Waldinger and asserting entitlement to benefits from the Second Injury Fund.[2]

In July 2007, Mettler again saw Dr. Lee for ankle pain. Although Mettler inquired about an ankle replacement procedure, Dr. Lee recommended another ankle arthroscopy. On September 18, 2007, Dr. Lee performed a third ankle arthroscopy with extensive debridement of Mettler's right ankle. He released Mettler to return to work without restrictions on December 7, 2007. In a letter written in April 2008, Dr. Lee opined that Mettler's right ankle condition was a result of the August 9, 2001 work-related injury, rated Mettler's impairment at fifteen percent of the right lower extremity, and recommended Mettler be restricted to sedentary work.

Following a hearing and an intra-agency appeal, the commissioner found Mettler reached MMI on April 6, 2005, and awarded permanent partial disability benefits for a scheduled loss of fifteen percent of the right lower extremity with interest as provided in Iowa Code section 85.30. The commissioner further ordered Waldinger to pay healing period benefits for the period from the date of the third arthroscopic surgery, September 18, 2007, until Mettler returned to work as a plumber on December 7, 2007. The commissioner also found Mettler had sustained an industrial disability of fifteen percent for which the Second Injury Fund owed benefits under Iowa Code section 85.64.

---

[2]Mettler's claim against the Second Injury Fund under Iowa Code section 85.64 alleged prior injuries to his left knee, left elbow, and right knee as qualifying prior losses. Waldinger's answer alleged that Mettler's lower extremity disability, if any, should be apportioned so that only disability attributable to the work-related injury would be allocated to Waldinger.

Waldinger filed a petition for judicial review contending the commissioner erred in awarding healing period benefits following the September 2007 surgery, in finding fifteen percent disability to Mettler's right lower extremity, and in failing to apportion Mettler's lower extremity disability under Iowa Code section 85.34(7) to account for the fact that Mettler had lost part of the use of his right leg before he began working for Waldinger. Mettler filed a cross-petition for judicial review requesting his claim against the Second Injury Fund be remanded to the agency on the ground that the agency miscalculated and understated his loss of earnings as a factor in the assessment of industrial disability for purposes of the award against the Second Injury Fund. The district court affirmed the commissioner's award for lower extremity disability and rejected Waldinger's contention that the disability should be apportioned. The court also affirmed the award of healing period benefits, but remanded the Second Injury Fund claim to the agency for further proceedings as Mettler requested.

Waldinger and the Second Injury Fund appealed the district court's ruling, and we transferred the appeal to the court of appeals. The court of appeals affirmed the commissioner's determination that Waldinger was liable for the entirety of Mettler's lower extremity disability but reversed the district court's rulings remanding the industrial disability claim against the Second Injury Fund and awarding healing period benefits. Mettler filed an application urging us to review the two issues which were reversed by the court of appeals. We granted further review, however, to decide only whether the commissioner correctly interpreted Iowa Code section 85.34(1) to allow an award of healing period benefits for a period of disability commencing on September 18, 2007, the date of Mettler's last surgery, until December 7, 2007, when he

returned to work as a plumber. We vacate the decision of the court of appeals on the healing period issue and affirm the district court's judgment affirming the commissioner's award of healing period benefits under section 85.34(1). As our further review does not address them, the decision of the court of appeals on all other matters raised in this appeal shall be final.

## II. Scope of Review.

Mettler's claim for healing period benefits turns on whether the workers' compensation commissioner properly interpreted Iowa Code section 85.34(1). This court has previously concluded in several cases that the legislature did not grant the commissioner authority to interpret chapter 85. *See Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 330 (Iowa 2005); *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 464 (Iowa 2004). However, we recently explored the analytical framework for determining on judicial review the extent to which we give deference to an agency's interpretations of law. *See Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). Under the *Renda* framework, our review of an agency's interpretation of a statutory provision depends on whether the legislature has clearly vested the agency with discretionary authority to interpret the particular statutory provision. *Id.* As we have not yet applied to section 85.34(1) the analytical framework announced in *Renda*, we must consider the question of the extent to which, if at all, the commissioner's interpretation of section 85.34(1) is entitled to deference on judicial review.

The legislature's vesting of authority in an agency to interpret a statute need not be expressed and may be found upon "an examination of the phrases or statutory provisions to be interpreted, their context, the purpose of the statute, and other practical considerations." *Id.* at 11.

Our inquiry "must always involve an examination of the specific statutory language at issue, as well as the functions of and duties imposed on the agency." *Id.* at 12. In the absence of explicit guidance from the legislature, it is usually inappropriate to determine whether an agency has authority to interpret an entire statute. *Id.* at 13. "Accordingly, broad articulations of an agency's authority, or lack of authority, should be avoided in the absence of an express grant of broad interpretive authority." *Id.* at 14. Thus, our conclusions in prior cases that the legislature granted the commissioner no authority to interpret Iowa Code chapter 85, *see, e.g., Mycogen Seeds*, 686 N.W.2d at 464, were overbroad and are incompatible with the new analytical framework announced in *Renda*.

The legislature has granted to the commissioner the authority to "[a]dopt and enforce rules necessary to implement" chapters 85, 85A, 85B, 86 and 87. Iowa Code § 86.8(1)(*a*). This legislative grant of broad rulemaking authority is relevant to our determination of whether interpretive discretion has been vested in the commissioner pertaining to section 85.34(1), but it is not conclusive. *Compare City of Marion v. Iowa Dep't of Revenue & Fin.*, 643 N.W.2d 205, 207 (Iowa 2002) (finding agency vested with authority to promulgate rules "necessary and advisable for its detailed administration" had discretion to interpret the term "athletic sport," a term not defined in the statute), *with Iowa Land Title Ass'n v. Iowa Fin. Auth.*, 771 N.W.2d 399, 402 (Iowa 2009) (concluding the legislature's delegation to the Iowa Finance Authority of the authority to adopt rules "necessary for the implementation of the title guaranty program" did not clearly vest the agency with authority to interpret the terms "hardship" and "public interest" in Iowa Code section 16.91(5)). After surveying this court's decisions in these cases and

others, we noted in *Renda* that our determination of whether the legislature has clearly vested interpretive authority in an agency turns not merely on a grant of broad rulemaking power, but on other case-specific factors as well. *Renda*, 784 N.W.2d at 13–14. We must look carefully "at the specific language the agency has interpreted as well as the specific duties and authority given to the agency with respect to enforcing particular statutes." *Id.* at 13.

If we conclude authority has clearly been vested in the commissioner for the interpretation of a statutory provision, we will affirm the commissioner's interpretation unless it is "[b]ased upon an irrational, illogical, or wholly unjustifiable interpretation." Iowa Code § 17A.19(10)(*l*). If, however, the commissioner has not been vested with the authority to interpret the provision, we will accord no deference to the commissioner's interpretation. *Id.* § 17A.19(10)(*c*); *see also Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 519 (Iowa 2012) (according no deference to commissioner's interpretation because the legislature did not grant the commissioner authority to interpret the term "suitable work" under Iowa Code section 85.33(3)).

### III. Discussion.

Iowa Code section 85.34(1) provides:

> *Healing Period.* If an employee has suffered a personal injury causing permanent partial disability for which compensation is payable as provided in subsection 2 of this section, the employer shall pay to the employee compensation for a healing period, as provided in section 85.37, beginning on the first day of disability after the injury, and until the employee has returned to work or it is medically indicated that significant improvement from the injury is not anticipated or until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, whichever occurs first.

Iowa Code § 85.34(1).

Waldinger contends the commissioner erred in interpreting section 85.34(1) as allowing an award to Mettler of healing period benefits for a period of postsurgical convalescence that occurred after he reached MMI[3] on April 6, 2005, or returned to substantially similar work. Put another way, Waldinger contends the proper interpretation of the statute does not authorize the commissioner to order the resumption of healing period benefits for approximately thirteen weeks during which Mettler was unable to work as a consequence of the surgery performed on September 18, 2007, because he had previously returned to substantially similar work and reached MMI.

Mettler takes a different view of the statute, contending the commissioner correctly interpreted section 85.34(1) as allowing for the possibility of more than one healing period following a work-related injury. Mettler contends the commissioner correctly interpreted the statute as allowing a resumption of the healing period when, after multiple surgeries, periods of convalescence, returns to work, and ratings of permanent impairment by medical providers, a claimant again becomes temporarily disabled from work as a consequence of ordinary and necessary surgical treatment for the work-related injury.

---

[3]"MMI" is a term of art commonly used by the commissioner, attorneys practicing in the field of workers' compensation law, and medical providers expressing opinions affecting claimants' entitlement to healing period benefits and permanent partial disability benefits under Iowa Code section 85.34. The term is used as an alternative means of expressing the point at which "it is medically indicated that significant improvement from the injury is not anticipated." Iowa Code § 85.34(1). A treatise on Iowa workers' compensation law uses "maximum recuperation" as an alternative moniker for the MMI concept. *See* 15 James R. Lawyer, *Iowa Practice Series: Workers' Compensation*, § 13:3, at 135 (2011).

To resolve the issue, we must first determine whether the legislature clearly vested in the commissioner the authority to interpret the phrase

> the employer shall pay to the employee compensation for a healing period . . . beginning on the first day of disability after the injury, and until the employee has returned to work or it is medically indicated that significant improvement from the injury is not anticipated or until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of the injury.

*Id.*

**A**. **Commissioner's Authority to Interpret Iowa Code Section 85.34(1).** Iowa Code chapter 85 authorizes a range of benefits for a worker who sustains a permanent partial disability in the course and scope of his employment. Among these are health care benefits for the treatment of the injury under section 85.27; healing period benefits sustaining the injured employee during convalescence and disability from work under section 85.34(1); and permanent partial disability benefits under section 85.34(2)(*a–t*) for "scheduled" losses and section 85.34(2)(*u*) for all other injuries resulting in permanent partial disability.

The legislature has expressly delegated to the commissioner the duty to implement and enforce these remedies against employers for injuries sustained by their employees in the course and scope of employment. *See id.* §§ 86.8(1)(*a*), 85.20. Under the *Renda* analysis, however, our inquiry requires us to determine whether the legislature nonetheless clearly granted the commissioner authority to interpret section 85.34(1). *Renda*, 784 N.W.2d at 11–12.

In *Office of Consumer Advocate v. Iowa Utilities Board*, we concluded the legislature's directive to "adopt rules prohibiting an unauthorized change in telecommunication service" evidenced a clear

vesting of authority in the Iowa Utilities Board to interpret the unauthorized-change-in-service provisions in section 476.103. 744 N.W.2d 640, 643 (Iowa 2008); *see also Evercom Sys., Inc. v. Iowa Utils. Bd.*, 805 N.W.2d 758, 762–63 (Iowa 2011). We find no similar express statutory grant of interpretive authority to the commissioner pertaining to the commencement and termination of a healing period under section 85.34(1).

Section 85.34(1) leaves undefined several statutory terms and phrases including "a healing period," "disability," "return[] to work," "significant improvement from the injury," and "employment substantially similar." Although the commissioner is expressly directed to "[a]dopt and enforce rules necessary to implement" chapter 85, this directive standing alone did not constitute a clear vesting of interpretive authority. *Iowa Land Title*, 771 N.W.2d at 402. Having reviewed the language of the statute and considered the specific duties and authority given to the commissioner under the provision, we are not persuaded that the legislature clearly vested in the commissioner interpretive authority for section 85.34(1). Accordingly, our review of the commissioner's interpretation of section 85.34(1) is for correction of errors at law. *NextEra Energy Res., LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 37 (Iowa 2012).

**B. Review of the Commissioner's Interpretation of Section 85.34(1).** The court of appeals decision reversing the commissioner's award of healing period benefits to Mettler for the period following the 2007 surgery relied on language from our decision in *Ellingson v. Fleetguard, Inc.*, 599 N.W.2d 440 (Iowa 1999). In that case, Ellingson sought healing period benefits for times she was unable to work based on a "retrogression" of her disability at times after the commissioner found

she had reached MMI. *Ellingson*, 599 N.W.2d at 447. Rejecting Ellingson's claim for additional healing period benefits for times after the date upon which the commissioner found she had reached MMI, we said:

> In contrast, once it has been established through a decision of the commissioner or a reviewing court that further significant improvement is not anticipated, all temporary disability benefits from a single injury are finally terminated to be followed by any permanent partial disability benefit payments that are established by the commissioner's order.

*Id.* We now conclude our interpretation in *Ellingson* of section 85.34(1) as a categorical prohibition of an award of healing period benefits for disability from work occurring after the date MMI has been achieved was erroneous, and we therefore overrule it.

Our decision today acknowledges that section 85.34(1) makes provision for "a healing period." Relying on our decision in *Ellingson* and reading the article "a" in the statute literally, the court of appeals concluded that Mettler was not entitled to another healing period for the time he was temporarily totally disabled from work following the September 2007 surgery. We now conclude the article "a" in the phrase "a healing period" was not intended by the legislature to limit healing period benefits to a single period of temporary disability per injury. In other contexts, we have found the article "a" to be unclear.

> "A" means "one" or "any," but less emphatically than either. It may mean one where only one is intended, or it may mean any one of a great number. It is placed before nouns of the singular number, denoting an individual object or quality individualized.
>
> The article "a" is not necessarily a singular term; it is often used in the sense of "any" and is then applied to more than one individual object. . . . [T]he meaning depends on context.

*Voss v. Iowa Dep't of Transp.*, 621 N.W.2d 208, 211 (Iowa 2001) (internal quotations marks and citation omitted). As used in the context of section

85.34(1), we conclude the legislature intended "a" to express the sense of "any."

When, after achieving MMI, a claimant is rendered temporarily disabled from work, as Mettler was, as a consequence of surgical treatment provided under section 85.27 for a work-related injury, a new healing period begins under section 85.34(1). Our suggestion to the contrary in *Ellingson* was flawed for two reasons. First, it diminished the promise of continuing medical care for work-related injuries under section 85.27 by eliminating the healing period remedy intended to replace wages lost during convalescence from ordinary and necessary treatment in scenarios presenting more than one period of temporary disability from work following a single injury. Further, it ignored the fact that a single injury can cause a new period of temporary disability even after a claimant has achieved MMI.

The employer's obligation to provide medical treatment under section 85.27 for work-related injuries is not limited to the duration of a healing period. *See* 15 James R. Lawyer, *Iowa Practice Series: Workers' Compensation*, § 15:1, at 182–83 (2011) [hereinafter Lawyer]. As in Mettler's case, an injured employee's need for ongoing medical care sometimes extends well beyond the duration of an initial period of convalescence and becomes manifest after a return to work or after periods of work interrupted by physician-directed time off work. On occasion, as in Mettler's case, an authorized treating physician prescribes and provides surgical treatment after the injured employee has returned to work or was thought to have achieved MMI. We see no principled reason why Mettler, or any similarly situated claimant, should be disqualified from a healing period remedy when ordinary and necessary medical care for a work-related injury temporarily removes

them again from the work force.[4]  The commissioner's interpretation of section 85.34(1) allowing a new healing period for a new period of disability during Mettler's convalescence from the 2007 surgery, notwithstanding the 2005 MMI date, correctly recognized that, at least until Mettler's claim is time-barred, the availability of a healing period remedy turned on whether a new period of disability from work caused by the August 9, 2001 injury began on the day of the September 18, 2007 surgery.

Among the alternative markers of the end of the healing period is the phrase "the employee has returned to work."  Certainly, some attempts to return to work are unsuccessful and temporary.  "Where the language is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty of ascertaining the true meaning devolves upon the court." *Case v. Olson*, 234 Iowa 869, 872, 14 N.W.2d 717, 719 (1944); *accord* 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 45:12, at 101 (7th ed. 2007) ("It is fundamental, however, that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question.").  Our interpretation of section 85.34(1) announced today avoids the absurd and unjust result that would arise if the statute were interpreted to allow only one course of healing period benefits for a single injury.  We cannot conclude the legislature intended to deny additional

---

[4]As this appeal proceeds from an agency arbitration decision, we do not address whether a claimant's access to a healing period remedy for an injury ends as a matter of law with the expiration of the limitations period for filing a review reopening proceeding under Iowa Code section 85.26(2).

healing period benefits when an injured employee's return to work proves unsuccessful and a new period of temporary disability from work begins or—as in Mettler's case—invasive medical treatment for the work-related injury again renders him temporarily disabled from work.

Among the other indicators of the end of a healing period is the employee's achievement of MMI. Characterized by the legislature as that point in the convalescence from which "it is medically indicated that further significant improvement from the injury is not anticipated," section 85.34(1) leaves room for the possibility that continuing medical treatment provided by the employer under section 85.27 can result in a series of intermittent invasive treatments, periods of temporary disability from work and convalescence, serial MMI dates, and revised permanent disability ratings following a single work-related injury.

Furthermore, our interpretation of the statutory provision is consistent with our long-standing principle of construction of the workers' compensation statute. The workers' compensation statute was adopted "for the benefit of the working [person] and should be, within reason, liberally construed." *Barton v. Nevada Poultry Co.*, 253 Iowa 285, 289, 110 N.W.2d 660, 662 (1961). Our interpretation of section 85.34(1) also notably conforms to the commissioner's long-standing interpretation of section 85.34(1) in cases involving intermittent periods of disability from work following a work-related injury. *See* 15 Lawyer, § 13:3, at 138–39 ("Healing period for an injury may terminate and then begin again."). Accordingly, we conclude the commissioner correctly interpreted section 85.34(1) as allowing a new course of healing period benefits during Mettler's temporary disability from work following surgery from September 18 through December 7, 2007, notwithstanding his prior

returns to work and earlier achievements of MMI following previous surgeries performed in the treatment of a single work-related injury.

The court of appeals also concluded the commissioner's award of healing period benefits must fail because the record contained no evidence supporting a finding that Mettler's "doctors anticipated reasonable improvement from the [2007 surgery]." As we affirm in this case the commissioner's interpretation of section 85.34(1) allowing an award of healing period benefits for a new period of disability beginning after the claimant reached MMI under the circumstances presented here, we need not address whether the record supports a finding that significant improvement was anticipated from the 2007 surgery.[5] The dispositive question is whether the treatment provided to Mettler under section 85.27 resulted in a new period of disability from work during the period of convalescence at a time before the claim for benefits for the injury of August 9, 2001, was time-barred. It clearly did.

**IV. Conclusion.**

We vacate only that part of the decision of the court of appeals reversing the award of healing period benefits. The disposition by the court of appeals of all other issues raised on appeal is affirmed.

**COURT OF APPEALS DECISION AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGEMENT AFFIRMED IN PART AND REVERSED IN PART; AND CASE REMANDED.**

All justices concur except Waterman, J., who concurs specially and Mansfield, J., who takes no part.

---

[5]It seems to us a reasonable inference, however, that the surgeon who performed the 2007 surgery anticipated some improvement in the injured ankle as a consequence of the treatment.

#10–0502, *Waldinger Corp. v. Mettler*

**WATERMAN, Justice (concurring specially).**

I respectfully specially concur. I agree with the majority's outcome because it is consistent with the workers' compensation commissioner's interpretation of Iowa Code section 85.34(1) (2011). My adherence to stare decisis precludes me from joining the full opinion. This decision turns on the interpretation of a term of art—"healing period"—that is unique to the workers' compensation law administered by the commissioner. The majority interprets that language itself without acknowledging the agency's interpretive authority or the deference owed to its interpretation of that specialized term within its expertise. *See Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 11–12 (Iowa 2010). I would apply *Renda* and defer to the agency's interpretation of the healing-period provision to reach the same result.