# IN THE COURT OF APPEALS OF IOWA

No. 20-0155
Filed April 14, 2021

**ANNETT HOLDINGS, INC. d/b/a TMC TRANSPORTATION,**
    Plaintiff-Appellant,

**vs.**

**NICHOLAS ROBERTS,**
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.

Annett Holdings, Inc. appeals the district court ruling awarding Nicholas Roberts industrial disability and healing-period benefits. **AFFIRMED.**

Sasha L. Monthei, Columbus Junction, for appellant.

Laura Schultes of RSH Legal, P.C., Cedar Rapids, for appellee.

Considered by Bower, C.J., and Doyle and Mullins, JJ.

**BOWER, Chief Judge.**

Annett Holdings, Inc., doing business as TMC Transportation (TMC), appeals the district court's ruling on judicial review of a review-reopening decision by the Iowa Workers' Compensation Commissioner. TMC asserts the commissioner erred in granting Nicholas Roberts additional healing-period benefits and in finding a thirty percent industrial disability. We affirm the commissioner's decision.

### I. Background Facts & Proceedings

TMC employed Roberts as an over-the-road flatbed truck driver. In addition to driving, his duties included placing tarps over the truck loads to secure them. While securing a load on November 15, 2010, Roberts injured his back. On November 24, an MRI revealed a herniated disc and significant degenerative disc disease.[1]

TMC declined to authorize care, and Roberts went to his family doctor. On January 26, 2011, his doctor found Roberts had full range of motion and released him to work with a lifting restriction, light duty requirements, and no prolonged sitting or standing. Roberts's employment with TMC ended shortly thereafter.

In March 2012, Roberts began working for Reliable Transport as a no-touch truck driver.[2] He worked there until July 10, 2015. The end of his employment was unrelated to his prior work injury.

---

[1] Roberts admitted prior back problems, but had been able to work without restriction before November 15, 2010.

[2] Roberts indicated as a no-touch driver he did not do any of the loading or unloading of the freight—he just drove the truck.

In May 2012, Roberts was evaluated for an independent medical examination (IME). The doctor found Roberts had a nine percent whole-person impairment as a result of the November 2010 incident and opined Roberts reached his maximum medical improvement (MMI) on January 26, 2011. The doctor included permanent lifting restrictions.

In February 2013, Roberts sought additional treatment for back pain and was prescribed narcotic medications and muscle relaxers. After another IME in March, the doctor concluded Roberts had not yet reached MMI. The doctor placed Roberts at ten percent impairment, but opined half of the impairment preexisted the 2010 injury.

Roberts filed a petition for workers' compensation benefits. The arbitration decision, filed October 30, 2013, determined Roberts's injury was work related and he had not yet reached MMI, and ordered healing-period benefits from November 15, 2010, through January 25, 2011. Healing-period benefits were not awarded for the period after January 25, 2011, because Roberts had been released to work with restrictions. The decision was affirmed on intra-agency appeal to the commissioner and upheld by the district court on judicial review in December 2014. TMC did not appeal.[3]

Roberts underwent another IME in February 2015. Although Roberts reported back pain and leg numbness, tests showed no abnormal findings. The

---

[3] After the district court decision was final, TMC paid Roberts a permanent partial disability lump-sum payment for a nine percent disability, with interest added for the time between the 2011 MMI date and payment in March 2015.

doctor opined Roberts had no permanent impairment. The only work restriction placed on Roberts concerned prescription medications.

At another examination in September 2015, Roberts claimed three months of "markedly increasing" leg and back pain, and the doctor ordered an MRI of Roberts's back. After the MRI, on December 29, the doctor noted that while Roberts's disc herniation was gone, he had "advanced degenerative disc disease." The doctor released him to light duty work. No further treatments or medications were recommended in December. Roberts was again declared to be at MMI as of February 24, 2016, with a nine percent impairment rating.[4]

On May 27, 2016, Roberts filed an application for review-reopening. In December 2017, the deputy commissioner awarded additional healing-period benefits from July 11, 2015, to December 29, 2015.[5] This period included the time between Roberts losing his employment at Reliable Transport and the MMI determination in December 2015. The deputy commissioner determined Roberts had a thirty percent industrial disability and TMC was responsible for the cost of Roberts's narcotic/opioid medication.

The commissioner affirmed the industrial disability finding, giving "considerable deference to findings of fact that are impacted by the credibility findings, expressly or impliedly made, regarding claimant by the deputy commissioner." The commissioner did not, however, agree TMC should pay for

---

[4] April and September 2015 toxicology screens showed no evidence of Roberts's prescribed medications, but he filled his prescriptions and reported to his examining doctors he was taking the medications.
[5] The deputy commissioner specifically found Roberts "to have low credibility" and noted a number of inconsistencies between his testimony and the record.

the prescribed medication, noting studies described the medications as "dangerous and unnecessary" and the record indicated Roberts was not taking them.

As for the healing-period-benefits claim, the commissioner considered the lifting restrictions still in place and concluded Roberts "was not medically capable of returning to work [at a] substantially similar job with defendant-employer, and was not at MMI." The commissioner determined Roberts met the criteria for healing-period benefits after his job with Reliable Transport ended under Iowa Code section 85.34(1), adopting the healing-period benefits award proposed by the deputy.

On judicial review, TMC challenged the healing period benefits awarded for 2015 and the commissioner's industrial disability finding. Roberts challenged the commissioner's prescription medication ruling. The district court affirmed the commissioner's ruling on all three issues.

TMC appeals, challenging the additional healing-period benefits and the level of industrial disability.

## II. Scope and Standard of Review

"Judicial review of workers' compensation cases is governed by Iowa Code chapter 17A. On our review, we determine whether we arrive at the same conclusion as the district court." *Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015) (citation omitted).

> A district court decision rendered in an appellate capacity is examined for correction of errors at law. In making such a determination, we apply the standards of Iowa Code section 17A.19[(10)], which provides an agency decision may be reversed where substantial rights of a party have been prejudiced and the

action is unsupported by substantial evidence or affected by errors of law, to determine if our conclusion would be the same as that of the district court.

*Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 257 (Iowa 1996) (citation omitted). "It is the commissioner's duty as the trier of fact to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue. The reviewing court only determines whether substantial evidence supports a finding '*according to those witnesses whom the [commissioner] believed*.'" *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007) (alteration in original) (citations omitted).

"With respect to questions of law, we have stated that no deference is given to the commissioner's interpretation of law because the 'interpretation of the workers' compensation statutes and related case law has not been clearly vested by a provision of law in the discretion of the agency.'" *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012) (citation omitted). "We give deference to the agency's interpretation if the agency has been clearly vested with the discretionary authority to interpret the specific provision in question. If, however, the agency has not been clearly vested with the discretionary authority to interpret the provision in question, we will substitute our judgment for that of the agency if we conclude the agency made an error of law." *Id.* (citation omitted).

**III. Analysis**

*1. Additional healing-period benefits.* TMC argues the commissioner erred in interpreting Iowa Code section 85.34 to require the payment of healing-period benefits to Roberts after his employment with Reliable Transport. Our supreme court has found the legislature did not clearly vest the commissioner with authority

to interpret section 85.34, and we review his interpretation for correction of errors at law. *Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 7 (Iowa 2012). In our analysis, we keep in mind the long-standing principle that the workers' compensation act is for the benefit of the worker and "should be, within reason, liberally construed." *Id.* at 9 (citation omitted).

Healing-period benefits are designed to "sustain[ ] the injured employee during convalescence and disability from work." *Id.* at 7. The employer owes the employee healing-period compensation

> beginning on the first day of disability after the injury, and until the employee has returned to work or it is medically indicated that significant improvement from the injury is not anticipated or until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, whichever occurs first.

Iowa Code § 85.34(1) (2015). "Compensation for permanent partial disability shall begin at the termination of the healing period provided in subsection 1." *Id.* § 85.34(2); *see Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 3774 (Iowa 2016).[6]

After achieving MMI, a claimant may be rendered temporarily disabled from work due to the work-related injury and a new healing period may begin. *Waldinger*, 817 N.W.2d at 8. "[T]he availability of a healing period remedy turn[s] on whether a new period of disability from work" caused by the original injury begins on the date of further treatment. *See id.* at 9. "[S]ection 85.34(1) leaves

---

[6] The payment of permanent partial disability benefits does not preemptively terminate healing-period benefits if none of the three statutory indicators exist. *See Evenson*, 881 N.W.2d at 372 (considering when permanent disability benefits are due in the event of multiple healing periods); *Waldinger*, 817 N.W.2d at 9.

room for the possibility that continuing medical treatment provided by the employer under section 85.27 can result in a series of intermittent invasive treatments, periods of temporary disability from work and convalescence, serial MMI dates, and revised permanent disability ratings following a single work-related injury." *Id.*

TMC argues Roberts's employment did not end due to his injury, therefore he does not meet the criteria for a second healing period. In *Waldinger*, the court noted "some attempts to return to work are unsuccessful and temporary," and concluded the legislature did not intend to deny an employee additional healing-period benefits because of an unsuccessful return to work. *Id.*

The commissioner opined that after Roberts's employment with Reliable Transport ended, "the only relevant factors are those set out in Iowa Code section 85.34(1): whether claimant had returned to work; was medically capable of returning to substantially similar work; or was at MMI." Because none of the factors were met from July 11 to December 29, 2015, healing-period benefits were warranted.

On our review, we find no legal error in the commissioner's analysis. We affirm the award of healing-period benefits.

*2. Industrial disability.* TMC claims the commissioner's thirty percent industrial disability award cannot be reconciled with the nine percent functional impairment rating provided by the doctors and Roberts's salary at Reliable Transport.

"Industrial disability measures an injured worker's lost earning capacity." *Second Injury Fund of Iowa v. Nelson*, 544 N.W.2d 258, 266 (Iowa 1995). The focus of an industrial disability determination is the ability of the claimant to be

gainfully employed; it is not merely an evaluation of what the claimant can or cannot do. *Id.* We inquire whether "there [are] jobs in the community that the employee can do for which the employee can realistically compete." *Thornton v. Am. Interstate Ins. Co.*, 940 N.W.2d 1, 37 (Iowa 2010) (alteration in original) (citation omitted). This requires consideration of those factors that bear on the claimant's employability, including "age, intelligence, education, qualifications, experience, and the effect of the injury on the worker's ability to obtain suitable work.'" *Guyton v. Irving Jensen Co.*, 373 N.W.2d 101, 103 (Iowa 1985).

The functional impairment as measured by an impairment rating is only one factor considered in determining industrial disability and the reduction in earning capacity. *See Hill v. Fleetguard, Inc.*, 705 N.W.2d 665, 673 (Iowa 2005). Here, the commissioner also considered Roberts has limited education, most of his experience is truck driving, Roberts has demonstrated an ability to work within his restrictions, and he has potential for retraining. Roberts's success in finding employment with an equal-or-better salary is not determinative. Geographic location is a relevant consideration in determining workers' compensation benefits, as is the availability of suitable work. *Neal*, 814 N.W.2d at 522–24. Roberts's employment at Reliable Transport occurred in a different state with a different market than his employment at TMC and does not reflect directly on Roberts's earning capacity in the same or similar job in the community.

Under all these facts, we find substantial evidence supports the commissioner's industrial disability determination.

**AFFIRMED.**