Garry REID, John Deanson, Agnes Digney, Lysle Eichelberg, Frances Furlong, John Furlong, Thomas Furlong, Jack Lemakau, Richard Noll and James O'Toole, Appellants,

v.

IOWA STATE COMMERCE COMMISSION, Iowa Department of Environmental Quality, Iowa Natural Resources Council, City of Muscatine, Iowa, Muscatine Power and Water, Appellees.

No. 83–1504.

Supreme Court of Iowa.

Nov. 14, 1984.

William L. Meardon and Angela M. Ryan of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellants.

Duane J. Goedken, Muscatine, for appellees City of Muscatine and Muscatine Power and Water.

Philip E. Stoffregen, Gen. Counsel, Patrick J. Nugent, Deputy Counsel, and David J. Lynch, Asst. Gen. Counsel, Des Moines, for appellee Iowa State Commerce Com'n.

Considered by REYNOLDSON, C.J., and McCORMICK, LARSON, SCHULTZ, and CARTER, JJ.

McCORMICK, Justice.

The question here is whether an electric utility's landfill is subject to county zoning regulations when it is not located on the same site as the generating plant. Petitioners own land near a farm which respondent Muscatine Power and Water sought Iowa State Commerce Commission approval to use as a landfill for solid waste disposal. The utility's coal-fired generating plant was located several miles away. The commission and district court, upon judicial review, ruled that the landfill was an essential component of the generating facility and therefore exempt from local zoning requirements. Upon petitioners' appeal, we affirm the district court.

The problem is one of statutory interpretation. Iowa Code chapter 476A (1983) gives the commerce commission jurisdiction to issue certificates of public convenience, use and necessity for construction of electric power generating plants over a certain size. Obviously the General Assembly believed that permission to construct large plants should be sought and obtained in a unified proceeding at the state level from an agency which could examine all relevant factors from a state rather than merely local perspective. The dispute here arises

from the statutory definition of the size of facility covered by chapter 476A. The definition is in section 476A.1(1), which provides:

"*Facility*" means any electric power generating plant or a combination of plants at a single site with a total capacity of one hundred megawatts of electricity or more and those associated transmission lines connecting the generating plant to either a power transmission system or interconnected primary transmission system or both. Transmission lines subject to the provisions of this chapter shall not require a franchise under chapter 478.

The commission granted Muscatine Power and Water, a utility owned by the City of Muscatine, a certificate in 1979 to construct a 150 megawatt addition to its 124 megawatt generating plant located on an island in Muscatine. At that time the utility intended to dispose of its coal residue in Illinois. The commission provided in the certificate that if the utility wished in the future to dispose of solid waste in Iowa the record would need to be reopened for consideration of amendments to the certificate.

In 1982 the utility filed an application to reopen the certificate to seek authority to establish and operate a landfill for disposal of its solid wastes on a farm in Muscatine County. The farm was located six or seven miles from the generating plant, twelve to fifteen miles away by road. The commission gave notice of the filing to numerous agencies. Muscatine County and the petitioner property owners intervened in the proceeding. An evidentiary hearing was held during which all parties had an opportunity to present evidence. The record included evidence from the Iowa Department of Environmental Quality and Iowa Natural Resources Council[1] on environmental and land use issues.

Before the commission acted on the application the Muscatine County board of adjustment denied the utility a special use permit for the landfill under the county zoning ordinance. The commission subsequently granted the amendment to the certificate, determining that it had jurisdiction of the facility under chapter 476A and that its jurisdiction superseded the zoning authority of the board of adjustment. This jurisdictional issue was raised in the landowners' petition for judicial review and is the issue presented in this appeal.

The parties agree that the commission has authority to grant certificates only for facilities as defined in section 476A.1. Petitioners contend that a landfill not located on the same site as the generating plant it serves is not included in the definition. Respondents, including the utility, City of Muscatine, and the commission, contend that the landfill is an essential component of a generating plant even when located several miles away and is therefore embraced in the definition. If it is embraced in the definition, the parties agree that the commission authority supersedes local zoning requirements pursuant to section 476A.5(3):

City and county zoning authorities designated as parties to the proceeding may appear on record and may state whether the facility meets city, county and airport zoning requirements. The failure of a facility to meet zoning requirements established pursuant to chapters 329, 358A and 414 shall not preclude the commission from issuing the certificate and to that extent the provisions of this subsection shall supersede the provisions of chapters 329, 358A and 414.

*See also* § 476A.8 ("Upon issuance of a certificate, notwithstanding any provision of law [subject to an exception], a regulatory agency, city or county shall not require any further approval, permit or license for the construction of the facility."). We must therefore analyze the definition of facility.

The parties focus on the part of the definition stating that facility "means any

---

1. These agencies have now been merged into the Iowa Department of Water, Air and Waste Management. *See* 1982 Iowa Acts ch. 1199.

electric power generating plant or a combination of plants at a single site with a total capacity of one hundred megawatts of electricity or more...." Petitioners argue that the definition includes only the components located at the same site as the generating plant. They interpret the definition of facility as if it reads "any electric power generating plant ... at a single site with a total capacity of one hundred megawatts of electricity or more...." Respondents interpret the definition as if it reads "any electric power generating plant ... with a total capacity of one hundred megawatts of electricity or more...." Thus the difference is whether the words "at a single site" modify the term "any electric power generating plant" as well as the term "a combination of plants."

Relevant principles of statutory interpretation are delineated in numerous cases and will not be repeated here. *See, ·e.g., Beier Glass Co. v. Brundige,* 329 N.W.2d 280, 283 (Iowa 1983). We do not believe the meaning of the statute is clear without resort to rules of construction. Applying the relevant rules, we have four reasons for believing respondents' interpretation of the statute is correct.

First, petitioners' interpretation would make commission jurisdiction dependent on the contiguity of the components of an electric generating plant. This interpretation does not flow rationally from the legislative intention to make jurisdiction dependent on plant capacity. Respondents' interpretation is consistent with the legislative purpose because for jurisdictional purposes it equates a combination of plants at one site with a single plant in determining the capacity of a facility. This interpretation makes plant capacity the controlling consideration.

Second, if petitioners were correct the commission would not even have had jurisdiction over construction of the enlargement of the Muscatine generating plant. Substantial evidence supports the commission's finding that a solid waste disposal site is an essential component of a coal-fired electric generator. Petitioners do not argue otherwise. Yet if a plant is not a facility unless all of its components are located at a single site, no plant is a facility when even one of its components is located at a different site. It is not reasonable to believe the legislature intended the commission to exercise jurisdiction only over plants whose components are all located at one site, regardless of the generating capacity of other plants.

Third, it is logical to believe the General Assembly intended the commission to have jurisdiction over all of the components of a facility even when the components are geographically separated. Proceedings for issuance of certificates and amendments are conducted as contested cases. § 476A.4(1). Notice of hearing is provided to interested agencies including regulatory agencies, county and city zoning authorities, and nearby landowners. § 476A.4(2). All of the parties who receive notice have an opportunity to be heard, and all issues, including zoning and environmental concerns, are presented to the commission. § 476A.5. Before an application can be granted the commission must find:

> The construction, maintenance, and operation of the facility will cause minimum adverse land use, environmental, and aesthetic impact and are consonant with reasonable utilization of air, land and water resources for beneficial purposes considering available technology and the economics of available alternatives.

§ 476A.6(3). In view of the comprehensiveness and unified nature of the commission proceeding, it would be strange for the legislature to include landfills under the commission's authority only when they are on the same site as the generating plant. It is unlikely that the legislature intended the duplication and proliferation of hearings that would occur if a local board of adjustment had jurisdiction to decide landfill locations.

Finally, we do not believe petitioners' interpretation of the statute is practical or workable. Local authorities could deprive the utility of an essential component of its

operations by use of the zoning power. This would give local zoning authorities veto power over the operation of a generating plant. Commission authority to issue certificates for generating plants could thus be nullified.

In support of their position petitioners cite an administrative regulation defining "site impact area" as the area within a ten mile radius of the generator. *See* 250 Iowa Admin.Code § 24.2(21). Even if this definition were relevant, the proposed landfill is within a ten mile radius of the generator in this case. We do not believe the definition is relevant, however, because the term defined relates to required environmental impact studies rather than to the definition of a facility. *See* 250 Iowa Admin.Code § 24.4(1)(c). The term "site" is separately defined in the regulations as "the land on which the generating unit of the facility, and any cooling facilities, cooling water reservoirs, security exclusion areas, and other necessary components of the facility, are proposed to be located." 250 Iowa Admin.Code § 24.2(20). Because a waste disposal site is a necessary component of a coal-fired plant, the land on which it is located comes within the definition of site in the regulation.

In its explanation accompanying the bill which became chapter 476A, the legislature stated its intention to establish a unitary procedure for issuance of certificates:

> This bill establishes a consolidated hearing procedure for the siting, construction, operation and maintenance of electric power generating facilities and certain associated transmission lines.... This bill requires the filing of one application resulting in a single proceeding.

H.F. 1470, 1976 Iowa Acts ch. 1206 §§ 1–14, 66th Gen.Assem., 2d Session.

We find that the unitary procedure gives the commission jurisdiction to issue certificates and amendments covering landfills that are geographically separated from the generators that the landfills serve. The commission and district court were right in holding that the commission's authority superseded local zoning requirements.

AFFIRMED.