# IN THE SUPREME COURT OF IOWA

No. 18–1184

Filed May 3, 2019

**BERTHA MATHIS** and **STEPHEN MATHIS,**

Appellants,

vs.

**IOWA UTILITIES BOARD,**

Appellee,

and

**PALO ALTO WIND ENERGY, L.L.C.** and **MIDAMERICAN ENERGY COMPANY,**

Appellees,

and

**PALO ALTO COUNTY BOARD OF SUPERVISORS,**

Appellee.

Appeal from the Iowa District Court for Palo Alto County, Nancy L. Whittenburg, Judge.

Landowners appeal a district court order affirming a declaratory order issued by the Iowa Utilities Board. **AFFIRMED.**

Wallace L. Taylor of Law Offices of Wallace L. Taylor, Cedar Rapids, and John M. Murray of Murray and Murray, Storm Lake, for appellants.

Cecil I. Wright II, Assistant General Counsel, and Emily Willits, Assistant Attorney General, for appellee Iowa Utilities Board.

Bret A. Dublinske and Brant M. Leonard of Fredrikson & Byron, P.A., Des Moines, for appellees Palo Alto Wind Energy, L.L.C. and MidAmerican Energy Company.

Sheila K. Tipton and Haley R. Van Loon of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, PLC, Des Moines, and Peter C. Hart, Palo Alto County Attorney, for appellee Palo Alto County Board of Supervisors.

**MANSFIELD, Justice.**

In this case we are asked to review a longstanding Iowa Utilities Board (IUB) legal standard for when a series of wind turbines constitute an "electric power generating plant or combination of plants at a single site" within the meaning of Iowa Code section 476A.1(5) (2017). The statute itself does not provide an obvious answer. Each wind turbine on its own generates energy, but wind turbines are often combined into "wind farms" or "wind projects" dispersed over a wide geographic area. So what is "a single site"?

Since 1997, in over twenty separate proceedings, the IUB has provided a consistent middle-path answer. It has ruled that for wind energy purposes all turbines connected to a single gathering line shall be considered a "single site" or "facility." Turbines connected to separate gathering lines are treated by the IUB as different sites or facilities. This ruling means that a large wind project may avoid the need for a certificate of public convenience, use, and necessity because it does not meet certain minimum power output requirements, although the IUB has authority to waive that requirement in some circumstances in any event.

Here, landowners in Palo Alto County are challenging a large 170-turbine wind project. They contend the IUB should have exercised jurisdiction over it by treating it as one facility. The IUB declined to require a certificate for the facility because, under the common-gathering-line standard, it did not exceed the minimum power output requirements. This meant that the County, rather than the IUB, had primary oversight over the project. The district court upheld the IUB's position.

On our review, we conclude the legislature has not clearly vested the IUB with authority to interpret Iowa Code section 476A.1(5). Nonetheless, after reviewing the chapter as a whole and considering other factors

relevant to statutory interpretation, we cannot find fault with the IUB's interpretation of an inherently ambiguous term. For this reason, we affirm the judgment of the district court upholding the IUB's declaratory order.

## I. Facts and Procedural History.

This case involves a wind energy project in Palo Alto County consisting of 170 wind turbines. Each turbine has a capacity of two megawatts; the overall capacity of the project is up to 340 megawatts of energy.

Palo Alto Wind Energy, L.L.C. (PAWE) submitted a "site plan" to the County for the project. The project extends over a wide swath of farmland—approximately 50,000 acres (about eighty square miles) in four separate townships.

Each turbine would have a hub height of 95 meters and a rotor diameter of 110 meters. Thus, from the ground to the tip of the rotor would measure 150 meters.

Bertha and Stephen Mathis live in Palo Alto County. On December 5, 2017, they filed a petition for declaratory order with the IUB. The Mathises sought a ruling that the project was a "facility" within the meaning of Iowa Code section 476A.1(5) for which a certificate of public convenience, use, and necessity from the IUB was required before the project could go forward.[1]

Iowa Code section 476A.1(5) defines a facility as

*any electric power generating plant or a combination of plants at a single site,* owned by any person, *with a total capacity of twenty-five megawatts of electricity or more* and those associated transmission lines connecting the generating plant

---

[1]Previously, the Mathises had filed a declaratory judgment action with the Iowa District Court of Palo Alto County. This was dismissed for failure to exhaust administrative remedies.

to either a power transmission system or an interconnected primary transmission system or both.

Iowa Code § 476A.1(5) (emphasis added).

Since 1997, in recognition of the "single site" language in the definition of "facility," the IUB has consistently taken the position that a wind project comprising multiple turbines and extending over a geographic expanse does not constitute a single "facility." Rather, in the context of a wind energy project, " 'facility' refers to the wind turbines connected to a common gathering line." *Zond Dev. Corp.*, Docket Nos. DRU-97-5, DRU-97-6, at 6 (November 6, 1997). Thus, in *Zond*, where the wind turbines were dispersed over 20 square miles (for one project) and 15 square miles (for another), but the subset of turbines connected to a common gathering line never exceeded twenty-five megawatts in power capacity, the IUB concluded that there was no covered "facility" for which a certificate of public convenience, use, and necessity was required. *Id.* at 5, 6. It is not disputed that the IUB has followed *Zond* in approximately twenty different regulatory proceedings since 1997.

On December 22, 2017, the Palo Alto County Board of Supervisors (Board), MidAmerican Energy Company (MidAmerican), PAWE, the Environmental Law & Policy Center, and the Iowa Environmental Council were granted leave to intervene in the Mathises' declaratory order proceeding. Later, Interstate Power and Light was allowed to intervene.

On February 2, 2018, the Iowa Utilities Board issued its declaratory order, finding,

> The Board has ruled on the issue presented by Petitioners on several prior occasions, beginning with its order in *Zond Development Corporation*, Docket Nos. DRU-97-5 and DRU-97-6. In *Zond*, the Board found that "facility" "refers to the wind turbines connected to a common gathering line." *Zond*, "Declaratory Ruling" (November 6, 1997). On multiple occasions the Board has confirmed the gathering line standard as its interpretation of "facility." *See e.g., MWW*

*Holdings, LLC and Storm Lake Power Partners I, LLC*, "Order Granting Waiver," Docket No. WRU-2015-0001-3700 (February 6, 2015) ("[I]f the capacity of turbines connected to a single gathering or feeder line is less than 25 MW of nameplate capacity, there is no facility as defined in Iowa Code § 476A.1(5)."); *MidAmerican Energy Company*, "Declaratory Order," Docker No. DRU-03-3 (June 6, 2003) ("[T]he term 'facility' refers to the wind turbines connected to a common gathering line at a single site.")

The Petitioners request that the Board reconsider its prior decisions on this issue and find that the Project meets the definition of a facility even though it will have less than 25 MW of capacity on any gathering line. However, Petitioners have presented no compelling justification to overturn this well-established Board precedent, nor have Petitioners distinguished the facts and circumstances surrounding the Project from any of the other wind energy projects that the Board has considered when finding that the term "facility" refers to the wind turbines connected to a common gathering line at a single site. Further, the Board issued the *Zond* decision on November 6, 1997. Since that decision, the Legislature has not taken action to modify the statutory language or otherwise addressed the Board's interpretation. Nor has any court addressed the issue.

For the foregoing reasons, the Board reaffirms its long-standing determination that the term "facility" is measured by the nameplate generating capacity of the wind turbines connected to a single gathering line.

On February 5, the Mathises filed a petition for judicial review pursuant to Iowa Code section 17A.19 in the Iowa District Court for Palo Alto County. The IUB, PAWE, and MidAmerican answered. Subsequently, the Board intervened and answered as well.

On July 3, the district court entered a ruling affirming the IUB's declaratory order. It concluded,

[T]he IUB's interpretation of the meaning of "facility" under Iowa Code § 476A.1(5) as referring to the wind turbines connected to a common gathering line at a single site was well within the grant of authority made by the legislature to the Board and the Court does not find substantial evidence or reason in this record why it should not give deference to the IUB's interpretation. Further, as is discussed herein below, on this record this Court is unable to conclude that the IUB's actions or decision have been irrational, illogical, or wholly

unjustifiable or that the IUB's decision in *Zond* and its progeny were affected by an error of law.

The court found the IUB's analysis was rational and reasonable, and it noted that *Zond* had been followed in subsequent decisions involving wind energy development. The court continued,

> Further, subsequent changes in 2001 by the Iowa Legislature to the statutory regime surrounding wind energy facilities, Iowa Code Chapter 476A, show[] the Legislature's continued support of economic development through alternative energy projects. The changes to Iowa Code Chapter 476A included, but [were] not limited to, expansion of the IUB's ability to waive any requirement of Chapter 476A. This Court agrees with Respondent IUB that these changes evidence the Legislature's awareness of the role Chapter 476A plays in promoting economic development through alternative energy projects and more importantly, post-*Zond*, has broadened the authority vested in the IUB.

On July 10, the Mathises appealed the district court's order. We retained the appeal.

## II. Standard and Scope of Review.

We have held as follows concerning our standard of review of agency decisions:

> Iowa Code section 17A.19(10) governs judicial review of an agency ruling. The district court reviews the agency's decision in an appellate capacity. In turn, "[w]e review the district court's decision to determine whether it correctly applied the law." "We must apply the standards set forth in section 17A.19(10) and determine whether our application of those standards produce[s] the same result as reached by the district court." "The burden of demonstrating the . . . invalidity of agency action is on the party asserting invalidity."

*Irving v. Emp't Appeal Bd.*, 883 N.W.2d 179, 184–85 (Iowa 2016) (alteration in original) (quoting *Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 207 (Iowa 2014)). We will reverse an agency action when it is "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the

discretion of the agency." Iowa Code § 17A.19(10)(*c*). Alternatively, we will reverse an agency action when it is "[b]ased upon an irrational, illogical, or wholly unjustifiable interpretation of a provision of law whose interpretation has clearly been vested by a provision of law in the discretion of the agency." *Id.* § 17A.19(10)(*l*).

Our focus here is on the narrow question of whether the legislature gave interpretive authority to the IUB to determine what is a "single site" within the meaning of Iowa Code section 476A.1(5).

The IUB argues that it has been vested with interpretive authority over this term. It cites Iowa Code section 476A.12, which provides,

> The board shall adopt rules pursuant to chapter 17A necessary to implement the provisions of this subchapter including but not limited to the promulgation of facility siting criteria, the form for an application for a certificate and an amendment to a certificate, the description of information to be furnished by the applicant, the determination of what constitutes a significant alteration to a facility, and the establishment of minimum guidelines for public participation in the proceeding.

*Id.* § 476A.12.

However, we have previously held that language authorizing an agency to adopt rules "necessary to implement" a chapter of law does not by itself amount to a vesting of interpretative authority. *See Iowa Dental Ass'n v. Iowa Ins. Div.*, 831 N.W.2d 138, 144 (Iowa 2013); *Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 5 (Iowa 2012); *see also Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 13 (Iowa 2010) (indicating that a grant of mere rulemaking authority does not give the agency authority to interpret all statutory language). And while section 476A.12 refers specifically to "facility siting criteria," this declaratory order proceeding does not involve the criteria for *siting* a facility, but whether a wind project is even a covered facility in the first place.

Furthermore, in recent years, we have generally not deferred to IUB interpretations of statutory terms. In *NextEra Energy Resources, LLC v. Iowa Utilities Board*, we held that the IUB's interpretation of the phrase "electric supply needs" as used in Iowa Code section 476.53(4)(*c*)(2) (2009) should be examined for correction of errors at law. 815 N.W.2d 30, 38 (Iowa 2012). We explained,

> [S]imply because the general assembly granted the Board broad general powers to carry out the purposes of chapter 476 and granted it rulemaking authority does not necessarily indicate the legislature clearly vested authority in the Board to interpret all of chapter 476.

*Id.*; *see also* Iowa Code § 476.2(1) (2017) (providing that the IUB "shall have broad general powers to effect the purposes of this chapter" and "shall establish all needful, just and reasonable rules, not inconsistent with law, to govern the exercise of its powers and duties . . . .").

Likewise, in *Hawkeye Land Company v. Iowa Utilities Board*, we held the legislature had not clearly vested interpretive authority in the IUB over the terms "public utility" and "railroad corporation" as used in Iowa Code chapter 476, again despite the fact that section 476.2(1) grants the IUB "broad general powers to carry out the purposes of chapter 476." 847 N.W.2d at 207, 208 (quoting *NextEra Energy*, 815 N.W.2d at 37).

In *SZ Enterprises, LLC v. Iowa Utilities Board*, we similarly concluded the IUB was not entitled to deference in its interpretation of the terms "public utility" and "electric utility" as used in Iowa Code chapter 476. 850 N.W.2d 441, 451–52 (Iowa 2014). There, we noted that "no provision in chapter 476 explicitly grants the agency the authority to interpret the terms," and we found that these terms were not "uniquely within the subject matter expertise of the agency." *Id.* at 451, 452 (quoting *Renda*, 784 N.W.2d at 14).

A wording comparison does not convince us that Iowa Code section 476A.12 ) (2017) grants more rulemaking authority to the agency than section 476.2(1). Nor are we persuaded that "single site" is a term "uniquely within the subject matter expertise of the agency." *Renda*, 784 N.W.2d at 14. Additionally, we do not believe the waiver provision in section 476A.15 bolsters the IUB's claim to interpretive authority over the term "single site." That provision enables the IUB to waive any requirement of chapter 476A if it determines that the public interest would not be adversely affected. It allows the IUB, in certain circumstances, to waive statutory language in a specific case. It does not empower the IUB to define what that language means in all cases.

For all these reasons, we conclude the IUB has not been clearly vested with authority to interpret the term "single site" as used in Iowa Code section 476A.1(5). We therefore review the IUB's interpretation for errors at law.

**III. Merits.**

The phrase "single site" is ambiguous. *See* Iowa Code § 476A.1(5). But on our review, we agree with the Board's view that it is something less than an entire wind project. We also find ourselves unable to improve upon the Board's definition as captured in some twenty years' worth of rulings and tacitly (if not explicitly) approved by our legislature.

In the first place, "We give words their ordinary meaning absent legislative definition." *State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019). We do not think "single site" would ordinarily be associated with an expanse of some eighty square miles (or fifteen or twenty as in *Zond*). As the IUB put it in *Zond*,

> The [IUB] does not believe, in these cases, that the word "site" refers to a 15 or 20 square mile area. However, the [IUB] also does not believe "facility" refers only to a single wind

turbine. In these cases involving [alternate energy production] wind energy projects built to help satisfy investor-owned utilities' statutory AEP purchase obligation, the [IUB] believes "facility" refers to the wind turbines connected to a common gathering line.

*Zond*, at 6.

Additionally, as the IUB noted in *Zond*, the phrase "single site" also appears in a somewhat analogous federal context. *Id.* at 7. Under federal law, a "small power production facility" is exempt from certain permitting and regulatory requirements. *See* 16 U.S.C. § 824a–3(e) (2017). According to federal law,

"small power production facility" means a facility which is an eligible solar, wind, waste, or geothermal facility, or a facility which--

(i) produces electric energy solely by the use, as a primary energy source, of biomass, waste, renewable resources, geothermal resources, or any combination thereof; and

(ii) has a power production capacity which, together with any other facilities located at the same site (as determined by the Commission), is not greater than 80 megawatts;

*Id.* § 796(17)(A)(i)–(ii).

The Federal Energy Regulatory Commission (FERC) has in turn issued a rule that "facilities are considered to be located at the same site as the facility for which qualification is sought if they are located within one mile of the facility for which qualification is sought . . . ." 18 C.F.R. § 292.204(a)(2)(i) (2017). Further, "the distance between facilities shall be measured from the electrical generating equipment of a facility." *Id.* § 292.204(a)(2)(ii). Additionally, the FERC has authority to modify the application of the one-mile standard "for good cause." *Id.* § 292.204(a)(3).

Accordingly, the FERC has found that a wind project consists of more than one facility where two portions of it were separated by more than one mile even though (1) the owner in other contexts represented the

project as a single wind-energy facility or single wind farm, (2) the two portions shared a common interconnection to the grid, and (3) the owner was pursuing a single-site permit for the combined facilities. *See Northern Laramie Range Alliance, Pioneer Wind Park 1, LLC, & Pioneer Wind Park II, LLC*, 138 F.E.R.C. ¶ 61,171, at 61,731, 61,734 (2012). Furthermore, the FERC noted that it had authority to "lessen the otherwise applicable requirements, including the one-mile rule," under its regulation if good cause were shown. *Id.* at ¶ 61,733

If nothing else, the FERC's rule demonstrates that it is not self-evident to the federal government what constitutes a "single site" for the production of alternative energy such as wind and that the federal government has decided to answer the question with a regulation that provides a workable, middle-of-the-road standard.

It is logical to conclude that Iowa Code section 476A.1(5) incorporated a similarly pragmatic approach. *See* Iowa Code § 4.4(3) (presuming that "[a] just and reasonable result is intended" in enacting a statute). Unlike a coal-fired plant, say, alternative energy facilities such as wind may have multiple points from which energy is generated that can be dispersed over a broad area. At some point, a succession of wind turbines across an Iowa landscape ceases to be just one site and becomes multiple sites. To avoid repeated litigation of the issue, a clear rule that can be reconciled with the statutory language is needed. Focusing on the common gathering line provides such a standard.

Iowa Code section 476A.1(5) also must be read in conjunction with section 476A.15, which provides, "The [IUB], if it determines that the public interest would not be adversely affected, may waive any of the requirements of this subchapter." And it must be read in conjunction with section 476.41, which makes it "the policy of this state to encourage the

development of alternate energy production facilities." Because the IUB has authority to waive the requirement that any new electrical energy facility obtain a certificate if the public interest would not be adversely affected, and it is the official policy of the state to encourage new alternative energy facilities, an interpretation of section 476A.1(5) that tends to minimize the IUB regulatory burden on wind farms ought to be favored. *See id.* § 4.6(1), (7) (noting that if a statute is ambiguous the court may consider "[t]he object sought to be attained" and "[t]he preamble or statement of policy"); *Iowa Ins. Inst. v. Core Group of Iowa Ass'n for Justice*, 867 N.W.2d 58, 72 (Iowa 2015) ("[W]e read statutes as a whole rather than looking at words and phrases in isolation.").

Further, "[l]ongstanding administrative interpretations are entitled to some weight in statutory construction." *Iowa Ins.*, 867 N.W.2d at 77 (quoting *Griffin Pipe Prods. Co. v. Bd. of Review*, 789 N.W.2d 769, 775 (Iowa 2010)). The IUB has reiterated and followed *Zond* consistently in many proceedings for over two decades. "It is true . . . that we must interpret [the relevant statute] ourselves, but at a minimum the durability of the previous interpretation is worth noting." *Id.*; *see also* Iowa Code § 4.6(6) ("[T]he court . . . may consider among other matters . . . [t]he administrative construction of the statute.").

Additionally, the legislature amended subchapter 476A in 2001 without attempting to modify *Zond*. *See* 2001 Iowa Acts ch. 4. This far-reaching legislation was directed in part at alternate energy and authorized the use of advance ratemaking principles. *Id.* Nor has the legislature taken action to repudiate Zond since 2001. "We consider the legislature's inaction as a tacit approval of the [agency's] action." *Lowe's Home Centers, LLC v. Iowa Dep't of Revenue*, 921 N.W.2d 38, 48 (Iowa 2018) (alteration

in original) (quoting *City of Sioux City v. Iowa Dep't of Revenue & Fin.*, 666 N.W.2d 587, 592 (Iowa 2003)).

Finally, the legislature has recently utilized the common-gathering-line standard in a different Iowa Code chapter dealing with wind energy. In 2008, the legislature amended Iowa Code chapter 476B concerning wind energy production tax credits. 2008 Iowa Acts ch. 1128, § 5 (codified at Iowa Code § 476B.1(4)(*d*) (2008)). The amendment tethered the availability of the credit to the phrase, "connected to a common gathering line." *Id.* Thus, the amendment added subsection *d* to the definition of "*Qualified facility*" in Iowa Code section 476B.1 to state as follows:

> 4. "*Qualified facility*" means an electrical production facility that meets all of the following:
>
> a. Produces electricity from wind.
>
> b. Is located in Iowa.
>
> c. Was originally placed in service on or after July 1, 2005, but before July 1, 2012.
>
> d. For applications filed on or after March1, 2008, consists of *one or more wind turbines connected to a common gathering line which have a combined nameplate capacity of no less than two megawatts.*

*Id.* (emphasis added). A subsequent amendment added language establishing a maximum power capacity:

> d. (1) For applications filed on or after March 1, 2008, consists of one or more wind turbines connected to a common gathering line which have a combined nameplate capacity of no less than two megawatts *and no more than thirty megawatts.*

2009 Iowa Acts ch. 80, § 1 (codified at Iowa Code § 476B(1)(4)(*d*)(1)(2009)) (emphasis added).[2]

---

[2]Another amendment in 2013 left subsection *d*, subparagraph (1) unchanged. *See* 2013 Iowa Acts ch. 138, § 126 (codified at Iowa Code § 476B(1)(4)(*d*) (2013)).

In short, the legislature used the *Zond* approach of focusing on the capacity served by a common gathering line when determining what would be an eligible "facility."

The Mathises favor an expansive definition of "single site" that would encompass the entire wind project, arguing that it is supported by our decision relating to a coal-fired plant in *Reid v. Iowa State Commerce Commission*, 357 N.W.2d 588 (Iowa 1984). However, we do not believe *Reid* goes as far the Mathises would contend.

In *Reid*, we confronted the question of "whether an electric utility's landfill is subject to county zoning regulations when it is not located on the same site as the generating plant." *Id.* at 588. We ultimately affirmed both the commission and the district court which had "ruled that the landfill was an essential component of the generating facility and therefore exempt from local zoning requirements," even though the landfill was located several miles away. *Id.* at 588, 589.

There, a utility sought to "establish and operate a landfill for disposal of its solid wastes on a farm in Muscatine County" located about six or seven miles from the coal-fired generating plant that produced the waste. *Id.* at 589. "[T]he Muscatine County board of adjustment denied the utility a special use permit for the landfill under the county zoning ordinance." *Id.* The commission determined it had jurisdiction and superseded the board by granting an amendment to the utility's certificate, allowing the landfill project to move forward. *Id.* But the commission's jurisdiction depended on whether the landfill was a "facility," because the commission's authority to grant certificates was limited to facilities as defined in section 476A.1 (1983), and section 476A.5(3) provided, in part,

> The failure of a facility to meet zoning requirements established pursuant to chapters 329, 358A and 414 shall not preclude the commission from issuing the certificate and to

> that extent the provisions of this subsection shall supersede the provision of chapter 329, 358A and 414.

*Id.* The question thus turned on whether the landfill was part of the "facility." *Id.*

We found that "it is logical to believe the General Assembly intended the commission to have jurisdiction over all of the components of a facility even when the components are geographically separated." *Id.* at 590. "[I]t would be strange for the legislature to include landfills under the commission's authority only when they are on the same site as the generating plant." *Id.* And as a practical matter we found the petitioner's definition would "give local zoning authorities veto power over the operation of a generating plant," thereby nullifying the commission's authority to issue certificates. *Id.* at 591.

We believe *Reid* stands for the proposition that when the generation of electricity occurs at a single location, the IUB will retain jurisdiction over "all of the components" of that facility even when those components are physically separate, such as a landfill almost invariably will be. Otherwise, the "unitary procedure" intended by the legislature would be defeated. *See id.* Here, however, the generation of electricity is dispersed over some eighty square miles. The issue is not the exercise of "unitary" jurisdiction to avoid conflicting state and local regulation as in *Reid*, but how to treat an alternative energy project that produces power over a wide swath of territory.

The Mathises also cite to the definition of "site" in Iowa Administrative Code 199—24.2. This definition provides, " '*Site*' means the land on which the generating unit of the facility, and any cooling facilities, cooling water reservoirs, security exclusion areas, and other necessary components of the facility, are proposed to be located." *Id.* We believe this definition has limited relevance for wind turbines. It speaks of

"the generating unit" and refers to "any cooling facilities" and "cooling water reservoirs." *Id.* It seems to be tailored to a fossil-fuel plant.

The Mathises further cite to the IUB regulation relating to the requirements for the certificate of public convenience, use, and necessity. *See id.* r. 199—24.4. However, this regulation, in our view, does not address the issue of when multiple wind turbines constitute a single site. Rule 199—24.4(1)(e) provides that "a group of several similar generating units operated together *at the same location* such that segregated records of energy output are not available shall be considered as a single unit." (Emphasis added). Rule 199—24.4(1)(h) requires a "system impact analysis" concerning the effect of the facility on the transmission system. It is true that a wind project with multiple gathering lines may have only one connection to the transmission system, but the regulation does not forestall that possibility. Rule 199—24.4(4) requires information on "alternative sites," but again this begs the question of what is a single site.

We are also unpersuaded that the entire project should be deemed a "single site" under chapter 476A just because PAWE submitted one "site plan" to the County in order to comply with the Wind Energy Conversion Systems ordinance for Palo Alto County. Palo Alto County Wind Energy Conversion Systems Ordinance § 4(d) (Sept. 27, 2016). This is an apples-to-oranges comparison. The ordinance requires "a detailed site plan" to be submitted to the County for each "Wind Energy Conversion System" (WECS). *Id.* A WECS in turn is defined as

> an electrical generating facility comprised of one or more Wind Energy Devices and accessory facilities, including, but not limited, to: powers lines, transformers, substations and meteorological towers that operate by converting the kinetic energy of wind into electrical energy.

*Id.* at § 3(l). The "site plan" must include, among other things, "[a]pproximate location and total number of the proposed Wind Energy

Device(s)." *Id.* at § 4(d). Thus, the County's ordinance contemplates a unitary WECS, but without geographic limits on how far the WECS may extend. *See id.* The owner/developer has to submit a "site plan," but the project is not limited to a "single site." *See id.* We do not believe the County ordinance should guide us in construing Iowa Code section 476A.1(5).[3]

## IV. Conclusion.

As a court of generalists, not energy specialists, we are unable to say with confidence that the common-gathering-line standard is superior to all other tests for when a wind project should be deemed a single site or facility. What we can say is that compared to the standard advanced by the Mathises, it is more consistent with the underlying statutory language and more in line with the legislature's policy goals. Further, it is supported by a longstanding IUB administrative interpretation, apparent legislative acquiescence in that interpretation, and the legislature's endorsement of a similar standard in a different wind-energy statute. For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**

---

[3]We pause to address one other point. As previously noted, the relevant definition of "facility" is

> any electric power generating plant or a combination of plants at a single site, owned by any person, with a total capacity of twenty-five megawatts of electricity or more *and those associated transmission lines connecting the generating plant to either a power transmission system or an interconnected primary transmission system or both.*

Iowa Code § 476A.1(5) (2017) (emphasis added). During oral argument, counsel for PAWE explained that each gathering line or "collector line" enters the project substation. Since the substation could be viewed as the commencement of the "power transmission system," this would mean that under the common-gathering-line standard, each gathering line plus the individual turbine lines leading into that gathering line would be the "associated transmission lines" referenced in the statutory definition. Hence, although we believe the main interpretive issue is what amounts to a "single site," in our view the common-gathering-line standard also can be squared with the remaining language in the Iowa Code section 476A.1(5) definition.